**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ROME DIVISION**

| | |
|---|---|
| **IVANA A. ELLIOTT**, | |
| *Plaintiff*, | |
| v. | |
| **SHERIFF CLARK MILLSAP**, BARTOW COUNTY SHERIFF'S OFFICE, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES, AND **OFFICER JANE DOE**, IN HER INDIVIDUAL CAPACITY ONLY | CIVIL ACTION NO.: _____ <br><br> **VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES – JURY TRIAL DEMANDED** |
| *Defendants*. | |

## PLAINTIFF'S VERIFIED COMPLAINT

Ivana A. Elliott ("Plaintiff"), by and through her undersigned counsel, brings this Complaint for equitable relief and damages for violations of the Religious Land Use and Institutionalized Persons Act (RLUIPA) and First Amendment again Sheriff Clark Millsap ("Sheriff Millsap") of the Bartow County Sheriff's Office ("BCSO") and Officer Jane Doe ("Doe," and collectively with Sheriff Millsap, "Defendants"), and states as follows:

## I. INTRODUCTION

1.    The hijab—including a headscarf and modest, full-body clothing—is worn by many Muslim women as a mandatory symbol of piety and modesty.

2.    Since early 2025, Plaintiff, an observant Muslim, has worn the hijab in the presence of men outside her family as a required expression of her sincerely held religious beliefs.

3.    On April 6, 2025, Sheriff Millsap, through Officer Doe and other BCSO personnel, forced Plaintiff to remove her hijab during booking. This occurred before male officers, despite Plaintiff's repeated explanation that her faith prohibits appearing uncovered before men.

4.      Ignoring her religious objections, several male officers then surrounded her. Faced with escalating pressure and fear of violence, Plaintiff removed her undercap, fully exposing her hair.

5.      Despite her compliance with officers' demands, officers then placed Plaintiff into a holding cell, threw her to the ground, and stripped her naked before male officers while threatening to tase her.

6.      During her 32-hour detention, officers repeatedly forced Plaintiff to remove a makeshift head covering she had fashioned to preserve her religious modesty.

7.      This physical force and compelled exposure caused physical injury, recurrent panic attacks, and psychological harm requiring ongoing treatment.

8.      Hours later, BCSO staff photographed Plaintiff without her hijab against her expressed wishes. That photograph remains in official databases accessible to other law enforcement agencies and other persons under the Georgia Open Records Act and as permitted under O.C.G.A. § 35-1-19.

9.      Being seen without her hijab by men outside her immediate family violates the Plaintiff's sincerely held religious beliefs.

10.     The retention and potential dissemination of this photograph, along with any security footage, burdens Plaintiff's religious exercise and violates her

rights under RLUIPA and the First Amendment. Each time the images are accessed, it perpetuates the injury initiated on April 6, 2025.

11.     Plaintiff is willing to provide an updated booking photograph that accommodates her religious exercise while satisfying identification requirements.

## II. JURISDICTIONAL FACTS

### A. Plaintiff

12.     Ivana Annette Elliott is a 21-year-old Black Muslim woman. She is both a full-time student and employed, and resides in Atlanta, Georgia.

13.     Plaintiff is not currently incarcerated and therefore is not a "prisoner" under the Prison Litigation Reform Act ("PLRA"). She is not subject to its exhaustion requirement.[1]

### B. Defendants

14.     Defendant Clark Millsap is the elected Sheriff of Bartow County, Georgia, and a constitutional officer pursuant to Ga. Const. art. IX, § 1, ¶ III(a). He serves as the BCSO's final policymaker on jail administration, detainee custody, booking procedures, and the training and supervision of BCSO personnel.

---

[1] 42 U.S.C. § 1997e(a); *Harris v. Garner*, 216 F.3d 970, 974–75 (11th Cir. 2000) (holding that the PLRA's exhaustion requirement applies only to individuals who are "prisoners" at the time suit is filed).

15.     Under O.C.G.A. § 42-4-4(a)(1), Sheriff Millsap had legal custody and control over Plaintiff during her confinement at the Bartow County Jail.[2] He maintains his principal office at 104 Zena Drive, Cartersville, Georgia 30121, and is sued in his official and individual capacities.

16.     Defendant Officer Jane Doe, pictured below, is a detention officer at the Bartow County Jail, who ordered Plaintiff to remove her hijab and undercap on April 6, 2025. On information and belief, she resides in Bartow County, Georgia. She is sued in her individual capacity only.



---

[2] As a constitutional officer, the Sheriff is vested with "such qualifications, powers, and duties as provided by law." Ga. Const. art. IX, § 1, ¶ III(a). Georgia sheriffs possess final policymaking authority over jail administration and inmate custody. *Bd. of Comm'rs of Randolph Cnty. v. Wilson*, 260 Ga. 482, 482 (1990); *Manders v. Lee*, 338 F.3d 1304, 1311 (11th Cir. 2003).

**C. Jurisdiction and Venue**

17.    This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 because this action arises under the First Amendment to the United States Constitution, 42 U.S.C. § 1983, and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.*

18.    This Court is authorized to grant declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202, and Federal Rules of Civil Procedure 57 and 65.

19.    This Court has personal jurisdiction over Defendants because they reside in Georgia and the events occurred in this District.

20.    The Bartow County Jail is an "institution" under 42 U.S.C. § 2000cc-1(a) and receives federal financial assistance, triggering RLUIPA's protections.

21.    Venue is proper in the Northern District of Georgia, Rome Division, pursuant to 28 U.S.C. § 1391(b).

### III. FACTUAL ALLEGATIONS

**A. Background**

22.    Plaintiff Ivana Elliott is a 21-year-old Black woman residing in Atlanta, Georgia. She is a lifelong observant Muslim.

23.    Plaintiff's sincerely held religious beliefs require her to wear a hijab—including a headscarf and modest, full-body clothing—in the presence of men

outside her immediate family. This practice is mandatory in her own faith and integral to her religious identity.

24.    Plaintiff has adhered to this requirement since early 2025. Her observance predates this action and reflects the continuity and sincerity of her religious commitment.

25.    Although Plaintiff's previous driver's license featured a different photograph, her current license reflects her consistent religious practice.[3]

26.    Forcing Plaintiff to appear uncovered and recording her image without her hijab burdened her religious exercise. By retaining these photographs and security footage, Defendants continue to violate her rights under the First Amendment and RLUIPA.

**B. Incident at Issue**

27.    On April 6, 2025, Officer Alfonso of the Cartersville Police Department arrested Plaintiff on her way to her grandmother's house during a traffic stop on Interstate 75.[4]

28.    At approximately 5:26 a.m., Plaintiff arrived at the Bartow County Jail for intake and booking.

---

[3] Ex. C (Redacted photograph of Ms. Elliott's current driver's license).

[4] Ex. B (Redacted incident report from Ms. Elliott's arrest).

29.     Plaintiff encountered several male officers, a female nurse, and one female detention officer—Jane Doe. When Plaintiff requested to be booked by a female officer, the staff claimed no female officers were available. Plaintiff later saw several other female officers on the premises.

30.     Officer Doe ordered Plaintiff to remove her hijab for a booking photograph. Plaintiff removed the outer scarf but kept her undercap to conceal her hair.[5]

31.     When Officer Doe next ordered her to remove the undercap, Plaintiff explained her religious objection to appearing uncovered before men and requested a private intake. Officer Doe denied the request.

32.     Without conducting an individualized assessment, Officer Doe incorrectly asserted that Plaintiff's hijab was associated with Ramadan—which had ended—and denied accommodation.

33.     Though Plaintiff continued to object verbally, she offered no physical resistance. Multiple male officers then surrounded her.[6]

---

[5] Video of Ms. Elliott's Booking at 4:20. (Because the video shows Plaintiff uncovered and the relief sought here is to prevent further dissemination of the video depicting Plaintiff without her head covering, Plaintiff will provide it for *in camera* review at the Court's request, but does not submit it as an exhibit to the complaint.)

[6] *Id.* at 13:20.

34.    Fearing escalation and physical violence, Plaintiff removed her undercap.[7]

35.    Despite Plaintiff's compliance, BCSO officers physically forced her into a cell.

36.    Inside the cell, officers forced Plaintiff to the ground and stripped her naked before male officers. She remained nude on the floor for approximately five minutes while the men watched.

37.    Officers threw spare clothes at Plaintiff but threatened to tase her if she moved. Plaintiff remained motionless, naked, and humiliated.

38.    Once they exited, Plaintiff dressed and fashioned a makeshift head covering from the provided shorts to preserve her religious modesty.

39.    Male officers performed the strip search and exposed her without any individualized assessment that Plaintiff posed a security threat and without implementing privacy measures, including shielding her from male officers.

40.    Plaintiff remained in the cell for approximately four hours before officers returned to the cell.

41.    Despite Plaintiff's protests, officers then forcibly removed her makeshift hijab and moved her to yet another cell without completing her booking.

---

[7] *Id.*

42.    During this detention, officers also denied Plaintiff access to a restroom, directing her to use a hole in the floor. To avoid further exposing her body, Plaintiff attempted to refrain from using the toilet despite physical discomfort.

43.    Unable to endure the delay further, Plaintiff urinated on herself, suffering profound humiliation.

44.    Eight hours after her arrival, officers finally booked and photographed Plaintiff—still without her hijab or undercap and without her consent.[8]

45.    Officers then transferred Plaintiff to a cell with a toilet and sleeping mats, proving such accommodations were available but withheld.

46.    Plaintiff was released at approximately 1:34 p.m. on April 7, 2025.

**C. Ongoing Harm**

47.    During and after her detention, Plaintiff suffered multiple panic attacks and required intensive outpatient therapy four times weekly. She also sought urgent medical treatment, including a post-release MRI, for shoulder pain, significant bruising, and abnormal menstrual bleeding. These injuries are documented in medical and police records.

48.    By photographing Plaintiff without her hijab, Defendants extended the religious violation beyond her detention and exacerbated the forced exposure of

---

[8] Ex. A (Redacted copy of Ms. Elliott's booking photo).

her hair and body. The continued retention of these records and broad access to these records prolong the injury and continue to burden Plaintiff's mental and emotional well-being.

49.    Plaintiff's uncovered booking photograph remains in BCSO's database, accessible to local, state, and other government agencies and others under the Georgia Open Records Act and subject to O.C.G.A. § 35-1-19. In fact, Sheriff Millsap has already disclosed the photograph and booking sheet under the Open Records Act.[9]

50.    Because her criminal charges remain pending, Plaintiff faces a realistic risk of re-booking and re-detention and exposure to the same illegal practices. She suffers ongoing distress because photographs and videos of her without her hijab exist and may be viewed by men at any time. This awareness impairs her mental and emotional well-being and constitutes an irreparable injury.

51.    The existence of booking photographs and security footage depicting Plaintiff without proper covering perpetuates the harm to Plaintiff and is an ongoing violation of her sincerely held religious beliefs.

52.    Defendant's retention of booking photographs and security footage depicting Plaintiff without her religious covering continues to burden her religious

---

[9] *Id.* (The booking card was produced to Plaintiff's counsel with the uncovered photograph affixed. The copy attached hereto has been redacted by Plaintiff's counsel to prevent further dissemination of the photograph.)

exercise. This maintenance violates her rights under the First Amendment and RLUIPA.

## IV. CLAIMS FOR RELIEF

### COUNT I

### Violation of the Religious Land Use and Institutionalized Persons Act
**(against all Defendants)**

53.    Plaintiff repeats and re-alleges paragraphs 1-52 above as though fully set forth herein.

54.    Plaintiff's practice of wearing a hijab is a "religious exercise" under RLUIPA.[10]

55.    Defendants substantially burdened Plaintiff's religious exercise by forcing her to remove her hijab and undercap, strip-searching her in the presence of male officers, and retaining her uncovered booking photograph, which remains available to others in law enforcement and otherwise. These actions forced Plaintiff to violate her sincerely held beliefs.[11]

---

[10] *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 725 (2014) ("[I]t is not for us to say that [a religious belief] is mistaken or insubstantial."); *Benning v. Georgia*, 391 F.3d 1299, 1313 (11th Cir. 2004) (rejecting the State's attempt to question the validity or importance of an inmate's religious practice under RLUIPA).

[11] *See Khatib v. County of Orange*, 639 F.3d 898, 906 (9th Cir. 2011) (Gould, J., concurring) (recognizing that the forcing a Muslim woman to appear uncovered

56.    RLUIPA prohibits the government from imposing a substantial burden on religious exercise unless it demonstrates that the burden is the least restrictive means of furthering a compelling interest.[12] This protection is vital, as a detainee, Plaintiff was entirely dependent on the government's permission to practice her faith.[13]

57.    Sheriff Millsap's policies fail this "exceptionally demanding" least-restrictive-means test. Even assuming a compelling interest in inmate identification,[14] Defendants cannot show that forced uncovering was the least restrictive means of advancing that interest.

58.    Defendants readily rejected available alternatives that would have satisfied security and identification needs, including photographing Plaintiff in her hijab with her face fully visible, promptly restoring her head covering after a brief

---

before unrelated men is "precisely the kind of 'mischief'" intended to be remedied by RLUIPA).

[12] 42 U.S.C. § 2000cc-1(a); *Holt v. Hobbs*, 574 U.S. 352, 360–61 (2015).

[13] *Cutter v. Wilkinson*, 544 U.S. 709, 721 (2005) (explaining that RLUIPA protects institutionalized persons who are "unable freely to attend to their religious needs").

[14] O.C.G.A. § 42-4-7(a); *Knight v. Thompson*, 796 F.3d 1289, 1292 (11th Cir. 2015) (recognizing the State's interest in "quickly identify[ing] inmates," while requiring it to demonstrate that its policy is the least restrictive means of furthering that interest).

inspection, and conducting searches and clothing removal in private, female-only settings.

59.     Forced religious exposure is not a security necessity; it is an outlier policy. The U.S. Department of State and the State of Georgia authorize hijabs in official identification photographs.[15] Major law enforcement agencies, including the NYPD, routinely accommodate religious head coverings during booking.[16] Since these alternatives succeed in high-security environments, general appeals to identification cannot justify stripping individuals of their religious clothing.[17]

60.     Photographing Plaintiff as she ordinarily appears would better serve identification interests.

-------

[15] *See* U.S. Dep't of State, *Passport Photos*, https://travel.state.gov/content/travel/en/passports/how-apply/photos.html (last visited Mar. 2, 2026); *see also* 8 Foreign Affs. Manual § 402.1-4(c)(3) (2024) (authorizing head coverings for "recognized, traditional religious attire" worn continuously in public).

[16] Ganesh Setty, *NYPD Will Now Allow People to Wear Religious Head Coverings in Booking Photos*, CNN (Nov. 11, 2020), https://www.cnn.com/2020/11/10/us/nypd-head-coverings-hijabs/index.html; *see also* U.S. Dep't of Just., *Report on the 20th Anniversary of the Religious Land Use and Institutionalized Persons Act* 10 (2020) (detailing federal enforcement actions against jurisdictions refusing to accommodate religious head coverings).

[17] *See Holt*, 574 U.S. at 364–65 (comparable accommodations elsewhere defeat least-restrictive-means defenses); *Al-Kadi v. Ramsey Cnty.,* No. 16-cv-2642, 2019 WL 2448648, at *11 (D. Minn. June 12, 2019) (rejecting safety defense where jail forced hijab removal in front of male officers); *Omeish v. Kincaid*, 616 F. Supp. 3d 486, 497 (E.D. Va. 2022) (photographing plaintiff in a hijab satisfies identification interests), vacated as moot, 86 F.4th 546 (4th Cir. 2023).

61.    Defendants' refusal to adopt these standard religious accommodations indicates a custom or practice of requiring head-covering removal and conducting intrusive searches without individualized religious accommodation or privacy safeguards.

62.    Defendants acted with actual and expressed knowledge of Plaintiff's religious requirements. Their rejection of readily available safeguards was the moving force behind Plaintiff's physical and psychological injuries, for which she seeks all appropriate relief.[18]

63.    Defendants acted with deliberate indifference to Plaintiff's religious rights by maintaining and enforcing the following policies, practices, and customs:

      a.    Failing to adequately train, supervise, and control officers regarding the legal requirement to accommodate religious practices, including the wearing of the hijab in booking and incarceration;

      b.    Failing to establish specific procedures that allow detainees to maintain religious head coverings during the booking and housing process;

---

[18] The Supreme Court granted certiorari to consider whether RLUIPA authorizes individual-capacity damages in *Landor v. Louisiana Department of Corrections*, 145 S. Ct. 2814 (2025) (mem.), and heard argument on November 10, 2025. The United States, as amicus curiae, argued that RLUIPA's "appropriate relief" language should be interpreted consistently with *Tanzin v. Tanvir*, 592 U.S. 43 (2020), which held that RFRA permits individual-capacity damages. A decision is expected by June 2026.

c.      Failing to train and supervise officers on the proper, least-restrictive methods for conducting security searches of religious head coverings;

d.      Failing to establish protocols to protect detainees from the arbitrary deprivation of religious articles; and,

e.      Failing to implement and enforce "sight-sound" or "gender-concordant" privacy protocols to prevent male officers and detainees from viewing female Muslim detainees while their hair, heads, or bodies are exposed during searches or after the forced removal of a hijab.

64.     Plaintiff's criminal charges that resulted in this detention remain pending, putting her at well-founded risk of being re-exposed to BCSO and its refusal to protect religious exercise.

65.     Defendants' retention of the uncovered photograph and security footage—accessible through searchable databases and the Georgia Open Records Act—constitutes an ongoing, irreparable injury. This harm is redressable only by a permanent injunction mandating the record's destruction or its replacement with a religiously observant photograph.

## COUNT II

### <u>Violation of the First Amendment to the United States Constitution</u>
**(against all Defendants)**

66.    Plaintiff repeats and re-alleges paragraphs 1-52 above as though fully set forth herein.

67.    The First Amendment guarantees Plaintiff the right to freely exercise her religion.[19]

68.    Under 42 U.S.C. § 1983, any person acting under color of state law who deprives another of constitutional rights is liable for that deprivation.

69.    Defendants, acting under color of state law, deprived Plaintiff of this right by refusing to accommodate her religious beliefs during booking and detention.

70.    Specifically, Defendants forced Plaintiff to remove her hijab and undercap and strip-searched her before male officers. They further photographed her uncovered, creating a continuing burden on her religious exercise.[20]

---

[19] U.S. Const. amend. I; *see also Turner v. Safley*, 482 U.S. 78, 89 (1987) (holding that while a regulation may impinge on constitutional rights, it must be "reasonably related to legitimate penological interests").

[20] *Thai Meditation Ass'n of Ala., Inc. v. City of Mobile*, 980 F.3d 821, 830 (11th Cir. 2020) (defining substantial burden as pressure that "directly coerces" an individual to forgo religious precepts).

71.    These actions were not reasonably related to legitimate penological interests. Defendants could have accurately identified Plaintiff, given that her face was visible while she wore her hijab.

72.    Defendants' refusal to adopt readily available alternatives demonstrates that the forced exposure was arbitrary and unreasonable.

73.    Officer Doe's derogatory and inaccurate comments regarding Ramadan further show that the denial of accommodation was motivated by religious animus rather than legitimate security concerns.

74.    As a direct and proximate result of these actions, Plaintiff has sustained damages and suffered mental and emotional distress, humiliation, and embarrassment (and continues to do so).

## V. TRIAL DEMANDED

The Plaintiff hereby demands a trial by jury for all issues triable.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor and grant the following relief:

A.    Declaratory judgment that Defendant Sheriff Millsap violated the First Amendment and RLUIPA by requiring Plaintiff to remove her hijab, undercap, or clothing in the presence of men, whether for a booking photograph or other police procedures;

B.   Injunctive relief:

   a.   Enjoining Defendant Sheriff Millsap, in his official capacity, from requiring Plaintiff to remove her religious head covering in the presence of male officers, absent a compelling and particularized security justification;

   b.   Requiring Defendant Sheriff Millsap to permit Plaintiff to wear her hijab during booking photographs, provided her full face remains visible for identification purposes;

   c.   Requiring that any inspection or removal of Plaintiff's religious head covering be conducted in private and, when feasible, by female officers;

   d.   Requiring removal of Plaintiff's uncovered booking photograph from public-access systems and official databases and replacement with a photograph taken in compliance with her religious beliefs;

   e.   Ordering that, to the extent deletion is not feasible, the uncovered photograph be permanently sealed or restricted from public dissemination; and

   f.   Implement a policy change at Bartow County Sheriff's Office (1) prohibiting officers and staff from taking booking photographs of Muslim women without their hijab and (2) requiring that officers and

staff honor requests to be searched and/or stripped privately, and with female officers, when possible.

   C.   An award of appropriate nominal, compensatory, and punitive damages against Defendants individually as appropriate under 42 U.S.C. § 1983 and RLUIPA;

   D.   Award reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988, O.C.G.A. § 13-6-11, and other applicable law;

   E.   Grant such other and further relief as this Court deems just and proper.

Respectfully submitted this 9th day of March, 2026

/s/ Keon N. Grant
Keon Nicholas Grant
Georgia Bar No. 946800
Aaron Edward Butler
Georgia Bar No. 722335
**Council on American-Islamic
Relations – Georgia**
P.O. Box 956263
Duluth, GA 30095
Telephone: 470.604.7877
kgrant@cair.com
abutler@cair.com

/s/ James M. Slater
James M. Slater
Georgia Bar No. 169869
Slater Legal PLLC
2296 Henderson Mill Rd. NE #116
Atlanta, GA 30345
Telephone: 404.458.7283
james@slater.legal

/s/ Gerald Weber
Gerald Weber
Georgia Bar No. 744878
The Law Offices of Gerry Weber, LLC
P.O. Box 5391
Atlanta, GA 31107
Telephone: 404.522.0507
wgerryweber@gmail.com

*Counsel for Plaintiff Ivana Elliott*

# <u>VERIFICATION</u>

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the facts contained in the foregoing Verified Complaint are true and correct.

Executed on March 7, 2026, in Atlanta, Georgia.

_____

Ivana Elliott