## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ROME DIVISION

IVANA A. ELLIOTT,

     *Plaintiff,*

v.

SHERIFF CLARK MILLSAP, BARTOW
COUNTY SHERIFF'S OFFICE, IN HIS
INDIVIDUAL AND OFFICIAL CAPACITIES,
AND OFFICER JANE DOE, IN HER
INDIVIDUAL CAPACITY ONLY

     *Defendants.*

CIVIL ACTION NO.:

_____

PLAINTIFF'S BRIEF IN SUPPORT OF
PRELIMINARY AND/OR PERMANENT
INJUNCTIVE RELIEF

## **PLAINTIFF'S BRIEF IN SUPPORT OF PRELIMINARY AND/OR PERMANENT INJUNCTIVE RELIEF**

Plaintiff Ivana Elliott ("Plaintiff") files this brief in support of preliminary and/or permanent injunctive relief against Sheriff Clark Millsap, in his official capacity as Sheriff of Bartow County, Georgia, and reserves damages claims for later resolution. Plaintiff seeks a declaration that the Sheriff's booking policies violate the Free Exercise Clause of the First Amendment and the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc *et seq.* ("RLUIPA"), and to enter a preliminary injunction to:

(1)    Enjoin the Defendant from forcing her to remove her religious head covering for booking photographs or while incarcerated in the presence of men absent a compelling security interest;

(2)    Order the Defendant to implement intake policies that comply with RLUIPA and the First Amendment; and

(3)    Mandate the immediate expungement, destruction, and removal from all law enforcement databases of all booking photographs and security footage depicting Plaintiff without her hijab.

Forcing a detainee to remove religious headwear—and retaining or disseminating those images and videos—violates the First Amendment and RLUIPA. Because the policy/practice inflicts a continuing injury on Plaintiff's

religious exercise, immediate relief is necessary. Her claims for damages are reserved for trial.

## STATEMENT OF FACTS

The material facts are undisputed:

(1)     Plaintiff is a practicing Muslim. Her sincere religious beliefs require her to wear a hijab whenever she is around men who are not her relatives;

(2)     During the booking process, Plaintiff was required to remove her hijab and undercap for a booking photograph;

(3)     Fixed-wing security cameras at the jail recorded the incident;

(4)     The removal and photographing occurred in the presence of both male and female officers, despite Plaintiff's objection and her request that only female officers perform the process in private;

(5)     Plaintiff objected to the removal of her hijab and undercap for the booking photographs because of her sincerely held Muslim faith;

(6)      After booking, officers repeatedly returned to Plaintiff's cell to force her to remove a makeshift hijab. This continued after the identification photographs had been taken;

(7)     The Bartow County Jail system still contains photographs and videos of Plaintiff without her hijab. These records remain accessible to law

enforcement agencies and to anyone else under the Georgia Open Records Act for viewing and distribution as permitted under O.C.G.A. § 35-1-19.

## ARGUMENT

To obtain a preliminary injunction, Plaintiff must satisfy four elements: (1) she is likely to succeed on the merits; (2) she will suffer irreparable injury without an injunction; (3) the balance of equities favors her; and (4) an injunction serves the public interest.[1] A plaintiff needs to show only a substantial likelihood of success on at least one count of the complaint.[2] Plaintiff satisfies each element.

Plaintiff moves to consolidate the preliminary-injunction hearing with the trial on the merits. Consolidation lies within the Court's discretion and is appropriate when, as here, the issues are ripe for resolution.[3] This consolidation will not prejudice Plaintiff's right to address remaining matters, like damages, later in litigation.

---

[1] *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 20 (2008).

[2] *Butler v. Ala. Judicial Inquiry Comm'n*, 111 F. Supp. 2d 1224, 1230 (M.D. Ala. 2000).

[3] *See Drummond v. Fulton Cty. Dep't of Family and Children's Servs*., 563 F.2d 1200, 1204 (5th Cir. 1977); *Budlong v. Graham*, 488 F. Supp. 2d 1245, 1248-50 (N.D. Ga. 2006).

The parties do not dispute the material facts. An evidentiary hearing is therefore unnecessary.[4] Because this motion presents only legal questions, the Court should grant it.

## I. PLAINTIFF IS SUBSTANTIALLY LIKELY TO PREVAIL ON THE MERITS

### A. Defendant's booking policies and retention of Plaintiff's booking photograph violate RLUIPA.

Under RLUIPA, a local government may not substantially burden a detained individual's religious exercise unless it proves the burden furthers "a compelling governmental interest" and does so by "the least restrictive means."[5] RLUIPA protects religious exercise more broadly than the First Amendment. The statute focuses on the burden the government imposes, not on whether the claimant has other ways to practice her religion.[6]

To prevail, Plaintiff must show that the Defendant's policy substantially burdens her sincere religious beliefs.[7] In this Circuit, a "substantial burden" exists

---

[4] *See Cumulus Media, Inc. v. Clear Channel Commc'ns, Inc.*, 304 F.3d 1167, 1178 (11th Cir. 2002) (holding that an evidentiary hearing is required only when the material facts are "bitterly contested" and the court must make "credibility determinations.") (citing *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1312 (11th Cir. 1998)).

[5] 42 U.S.C. § 2000cc-1(a).

[6] *Holt v. Hobbs*, 574 U.S. 352, 361–62 (2015).

[7] *Id.* at 360–61.

when a policy pressures a person to choose between violating her faith or facing discipline.[8] If Plaintiff makes this showing, the Defendant must then satisfy strict scrutiny—the "most demanding test in constitutional law."[9]

### 1. Plaintiff's religious beliefs and the substantial burden imposed by exposing her in front of unrelated men and capturing her image without a hijab.

Plaintiff's sincere religious beliefs forbid her from appearing uncovered in the presence of men outside her immediate family. RLUIPA defines "religious exercise" broadly to include any practice "whether or not compelled by, or central to, a system of religious belief."[10] Forcing a Muslim woman to remove her hijab before men—and then keeping those images—is exactly the "mischief" RLUIPA was meant to remedy.[11]

---

[8] *Smith v. Owens*, 848 F.3d 975, 981 (11th Cir. 2017); *see also Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004).

[9] *Dunn v. Smith*, 141 S. Ct. 725, 725 (2021) (Kagan, J., concurring).

[10] 42 U.S.C. § 2000cc-3(g).

[11] *Khatib v. County of Orange*, 639 F.3d 898, 906 (9th Cir. 2011) (Gould, J., concurring); *see also Al-Kadi v. Ramsey County*, 2019 WL 2448648, at *9–10 (D. Minn. June 12, 2019) (denying summary judgment and holding that requiring a Muslim woman to remove her hijab in the presence of a male officer could amount to a substantial burden on her religious exercise).

The Eleventh Circuit has explicitly rejected "unquestioning deference to correctional officials" in RLUIPA cases.[12] Following the Supreme Court's guidance in *Holt*, the Circuit held in *Smith* that a grooming policy substantially burdened a Muslim inmate's exercise because it forced a choice between religious tenets and institutional discipline.[13] Crucially, *Smith* demands a "particularized, less deferential analysis" that requires the government to demonstrate its "marginal interest in enforcing" its policy against the specific individual.[14]

Defendant's policy/practice is more invasive than the grooming policy in *Smith*. It does more than limit religious practice; it mandates conduct that Plaintiff's faith forbids. This creates the "coercive" choice identified in *Smith*: Plaintiff must either violate her faith or face punishment. Other courts have reached the same conclusion in nearly identical cases.[15] Because the policy allows

---

[12] *Smith*, 848 F.3d at 980; *see also Gholston v. Powell*, 2019 WL 4305507, at *8 (M.D. Ga. Sept. 11, 2019) (Treadwell, J.) (holding that a plaintiff need not propose "viable alternatives," because RLUIPA places the burden on the defendant to prove it lacks a less restrictive means of furthering its compelling interest) (internal quotation marks omitted); *id.* (denying summary judgment to GDC on the plaintiff's beard- and hair-length RLUIPA claims).

[13] *Id.* at 981.

[14] *Id.*

[15] *See Omeish v. Kincaid*, 616 F. Supp. 3d 486, 494 (E.D. Va. 2022) (finding "no genuine dispute that the retention of the photographs places a substantial burden" on the plaintiff's religious exercise), vacated as moot, 86 F.4th 546 (4th Cir. 2023); *Clark v. City of New York*, 560 F. Supp. 3d 732, 740–42 (S.D.N.Y. 2021) (holding

no individualized accommodation and forces this choice, Plaintiff has met her burden under RLUIPA.

### 2. Defendant's booking policies cannot survive strict scrutiny.

Defendant's policies fail strict scrutiny. Although jails have a compelling security interest,[16] they must satisfy that interest through the "least restrictive means" of accommodating religious exercise.[17] Congress enacted RLUIPA to dismantle the "frivolous or arbitrary barriers" that impede religious exercise in jails.[18] In this Circuit, RLUIPA provides "heightened protection" that exceeds the First Amendment's floor.[19]

---

that a policy requiring Muslim women to remove their hijabs for booking photographs viewable by male officers violated the First Amendment).

[16] *See Lawson v. Singletary*, 85 F.3d 502, 512 (11th Cir. 1996).

[17] *Holt*, 574 U.S. at 368–69; *see also Knott v. McLaughlin*, 2019 WL 1379943, at *5 (M.D. Ga. Mar. 27, 2019) (Treadwell, J.) (holding that requiring Muslim inmates to pray privately instead of congregationally in a common area was not the least restrictive means of furthering the asserted compelling interest).

[18] *Cutter v. Wilkinson*, 544 U.S. 709, 716 (2005) (citing 146 Cong. Rec. 16,698–99 (2000)).

[19] *Smith v. Allen*, 502 F.3d 1255, 1266 (11th Cir. 2007).

### i. Defendant failed to use the least restrictive means of identifying Plaintiff.

Although jails have a compelling interest in "quick and reliable identification,"[20] Defendant cannot prove that forcing Plaintiff to remove her hijab was the least restrictive means of identifying her.[21] To satisfy this "exceptionally demanding" test, Defendant must explore alternatives and explain why he rejected them. A "blanket statement" that he considered all alternatives is not enough.[22]

In *Smith v. Owens*, the Eleventh Circuit explicitly reproved lower courts for granting "unquestioning deference" to correctional officials.[23] The *Smith* court explained that RLUIPA requires the government to prove its "marginal interest in enforcing" the policy against the specific claimant.[24] Defendant cannot justify forcing the removal of Plaintiff's head covering when the Georgia Department of Driver Services, the U.S. State Department, and USCIS all permit religious attire in official identification photos.[25] As the court explained in *Clark v. City of New*

---

[20] *Holt*, 574 U.S. at 365.

[21] *See Carter v. Myers*, 2017 WL 8897155, at *9 (D.S.C. July 5, 2017).

[22] *Spratt v. R.I. Dep't of Corr.*, 482 F.3d 33, 41 n.11 (1st Cir. 2007).

[23] *Smith v Owens*, 848 F.3d 975, 980 (11th Cir. 2017).

[24] *Id.* at 981.

[25] Ga. Comp. R. & Regs. R. 375-3-1-.15(c); *See* U.S. Dep't of State, *Passport Photos*, https://travel.state.gov/content/travel/en/passports/how-apply/photos.html

*York*, photographing a woman in her ordinary appearance—wearing her hijab—likely *furthers* identification interests because it reflects how she appears in public.[26]

### ii. Defendant's policy is an arbitrary departure from "well-run institutions."

The policies followed by other "well-run institutions" are highly relevant to the question of whether a restriction is necessary.[27] Defendant's refusal to accommodate Plaintiff departs from prevailing correctional practice.

Numerous jurisdictions, including police departments in Michigan, California, Minnesota, and Maine, allow detainees to remain covered for booking photos specifically to comply with RLUIPA.[28]

Even high-security state systems, such as the Texas Department of Criminal Justice, always allow Muslim female offenders to wear a hijab.[29] The *Smith v. Owens* court specifically pointed to such comparative data, including that many

---

(last visited Mar. 2, 2026); *see also* 8 Foreign Affs. Manual § 402.1-4(c)(3) (2024) (permitting head coverings for "recognized, traditional religious attire" worn continuously in public).

[26] *Clark v City of New York*, 560 F. Supp. 3d 732, 742 (S.D.N.Y. 2021).

[27] *Holt*, 574 U.S. at 368.

[28] *See Clark*, 560 F. Supp. 3d at 742; *Schlussel v. City of Dearborn Heights*, 2017 WL 4535811 (E.D. Mich. 2017), *aff'd*, 753 F. App'x 359 (6th Cir. 2018).

[29] *Taylor v. Nelson*, 2020 WL 7048605, at *7 (W.D. Tex. 2020).

other states and the federal government permitted the requested religious

accommodation, as evidence that the restriction failed strict scrutiny.[30]

### iii. Defendant ignored a "marginal interest" in enforcement.

The Defendant failed to conduct the "individualized, context-specific

inquiry" required by the Eleventh Circuit.[31] Plaintiff, as a practicing Muslim

woman, requested that a female officer conduct her intake at the Bartow County

Jail to accommodate her religious beliefs.[32] Even though multiple female officers

were present, her request was categorically denied.[33] Jail staff ordered Plaintiff to

remove her hijab for booking photographs, and Plaintiff reluctantly complied.[34]

When officers then further demanded the removal of her undercap, Plaintiff

explained that her religious beliefs prohibit her from appearing uncovered before

unrelated men and requested that a female officer conduct the procedure.[35] Several

---

[30] *Smith v. Owens,* 848 F.3d at 981 (11th Cir. 2017).

[31] *Smith*, 848 F.3d at 981.

[32] Verified Compl. ¶ 31.

[33] *Id.* ¶¶ 29-32.

[34] *Id.* ¶ 30.

[35] *Id.* ¶ 31.

male officers then surrounded her in a show of force, and fearing further escalation, Plaintiff was forced to remove her undercap too.[36]

Despite her compliance, officers (including male officers) forced Plaintiff into a cell, removed her clothing, and left her naked.[37] She dressed in jail clothing and fashioned a makeshift hijab from shorts, which officers repeatedly removed, even after the booking photos had been taken.[38] She was left in the cell to urinate on herself, and eventually, hours later, taken to be photographed without the undercap.[39] Nothing about this conduct furthered a legitimate security objective, and it only served to punish Plaintiff for seeking to exercise her religious rights.

The facts here are more severe than those in *Omeish v. Kincaid*, where the court found an RLUIPA violation because the state failed to use less restrictive means than the forced removal of a religious head covering for a photograph.[40]

The district court's decision in *Omeish* is factually dispositive. While the district court in *Omeish* did not rule that the removal of a hijab for booking photographs is *per se* a violation of RLUIPA, the facts there satisfied the statutory

---

[36] *Id.* ¶¶ 33-34.

[37] *Id.* ¶¶ 35-36.

[38] *Id.* ¶¶ 37-38, 40-41.

[39] *Id.* ¶¶ 42-44.

[40] *Omeish*, 616 F. Supp. 3d at 495–97.

regime. There, Omeish was instructed to remove her hijab, which was eventually

removed while she was in a room with male police officers and jail staff, causing

the *Omeish* plaintiff distress.[41] The egregiousness of Plaintiff's facts—the

humiliation and repeated violations she faced—goes well beyond the RLUIPA

violations in *Omeish*, highlighting the necessity of immediate injunctive relief.

Regarding Defendant's retention of the photos and videos of Plaintiff

without her head covering, "no factfinder could hold that there is a compelling

interest that would not be served by the less restrictive retention of a photograph of

[Plaintiff] wearing a hijab."[42] They serve as the digital embodiment of Defendant's

illegal conduct and should be destroyed to prevent harm. Therefore, Defendant

cannot prove the jail's policy meets RLUIPA.

### B. Defendant's booking policies violate the First Amendment.

The First Amendment guarantees the free exercise of religion and requires

the government to respect—and not interfere with—religious beliefs and

practices.[43] To prevail, Plaintiff must show that Defendant has "impermissibly

burdened one of [her] sincerely held religious beliefs."[44] In a custodial setting, a

---

[41] *Id.* at 489.

[42] *Omeish*, 616 F. Supp. 3d at 497.

[43] *Cutter v. Wilkinson*, 544 U.S. 709, 719 (2005).

[44] *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1294 (11th Cir. 2007).

policy restricting religious exercise is valid only if it is "reasonably related to legitimate penological interests."[45]

Under the *Turner* factors, Defendant's policy is unreasonable. While security is a legitimate interest, there is no "rational connection" between that interest and forcing a woman to remove her hijab for a photograph.[46] As established in *Clark v. City of New York*, photographing a detainee without her hijab *impedes* identification because it depicts her in a manner where she does not appear in public.[47] The fact that the Georgia Department of Driver Services and the federal government permit religious head coverings in identification photos dispels any claim that security compels their removal.[48]

Defendant ignored every "ready alternative" to his policy.[49] Jail staff denied Plaintiff's request for a female officer, prohibited her from using a makeshift covering, and forced her to appear uncovered before men. This policy burdens a

---

[45] *Turner v. Safley*, 482 U.S. 78, 89 (1987); *see also Dorman v. Chaplains Office BSO*, 36 F.4th 1306, 1313 (11th Cir. 2022).

[46] *Turner*, 482 U.S. at 89.

[47] *Clark v. City of New York*, 560 F. Supp. 3d 732, 742 (S.D.N.Y. 2021).

[48] *See* Ga. Comp. R. & Regs. R. 375-3-1-.15(c).

[49] *Turner*, 482 U.S. at 90.

central tenet of her faith.[50] Accommodating Plaintiff would not have burdened jail staff or resources. The existence of "obvious, easy alternatives"—like the Georgia DMV's policy—proves the Defendant's ban is an "exaggerated response" to jail concerns.[51] Other courts have held that these policies violate the Free Exercise Clause when they ignore reasonable alternatives.[52] Because Defendant failed to conduct the particularized, less deferential analysis required by law, his policies violate the Free Exercise Clause.[53]

## II. PLAINTIFF HAS DEMONSTRATED IRREPARABLE HARM

Plaintiff has suffered, and continues to suffer, irreparable harm from violations of her rights under RLUIPA and the First Amendment. Defendant's staff forcibly removed Plaintiff's hijab in the presence of male officers, denied her privacy, and memorialized the violation by photographing her uncovered and

---

[50] *Khatib v. Cnty. of Orange*, 639 F.3d 898, 907 (9th Cir. 2011) (Gould, J., concurring).

[51] *Turner*, 482 U.S. at 90.

[52] *See, e.g., Kaukab v. Harris*, 2003 WL 21823752, at *4 (N.D. Ill. Aug. 6, 2003); *Chapman v. Franklin Cnty. Sheriff*, 2022 WL 2915593, at *5 (S.D. Ohio July 22, 2022).

[53] *See Smith v. Owens*, 848 F.3d 975, 981 (11th Cir. 2017).

retaining security footage depicting the same. The law is clear: the loss of First Amendment freedoms, even for a minimal period, constitutes irreparable harm.[54]

This injury is ongoing. Defendant's retention of the uncovered booking photographs and security footage continues to impose a substantial burden on Plaintiff's religious exercise. Plaintiff also faces a real and immediate threat of future harm: under the terms of her pending bail agreement, she remains subject to re-incarceration. She would again be subjected to the same unlawful booking procedures. Where a plaintiff demonstrates a real and immediate threat of repeated injury, injunctive relief is warranted.[55]

## III. THE BALANCE OF HARDSHIPS AND THE PUBLIC INTEREST WEIGHS IN PLAINTIFFS' FAVOR

The balance of equities favors Plaintiff. While Defendant faces only the negligible administrative task of updating a policy, Plaintiff faces a daily, irreparable violation of her faith. An injunction will not burden Defendant; Plaintiff is no longer in custody, and many other "well-run institutions" already

---

[54] *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *see also Northeastern Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990).

[55] *See K.H. Outdoors, LLC v. City of Trussville*, 458 F.3d 1261, 1272 (11th Cir. 2006).

accommodate hijabs without compromising security.[56] Preliminary relief is essential to safeguard Plaintiff's religious exercise while this case proceeds.[57]

Granting an injunction also serves the public interest. Congress enacted RLUIPA to provide "expansive protection" for the religious exercise of institutionalized persons.[58] The public has a "serious interest" in seeing this federal law enforced.[59] This interest is at its zenith where, as here, a jailer's policy lacks the individualized justification that federal law requires.[60] An injunction will ensure Defendant's compliance with federal law and prevent further violations of Plaintiff's religious exercise.

## IV. PLAINTIFF'S RELEASE ON BOND DOES NOT RENDER HER CLAIMS MOOT

Plaintiff's release from the Bartow County Jail does not moot her claims for injunctive relief. A case is moot only when it is "impossible for the court to grant any effectual relief whatever to a prevailing party."[61] Two factors preserve a live

---

[56] *Holt*, 574 U.S. at 368–69.

[57] *See McCormack v. Twp. of Clinton*, 872 F. Supp. 1320, 1327 (D.N.J. 1994).

[58] *Rich v. Sec'y, Fla. Dep't of Corr.*, 716 F.3d 525, 532–33 (11th Cir. 2013).

[59] *Ray v. Comm'r, Ala. Dep't of Corr.*, 915 F.3d 689, 701 (11th Cir. 2019).

[60] *See Smith v. Owens*, 848 F.3d 975, 981 (11th Cir. 2017).

[61] *See Smith v. Allen*, 502 F.3d 1255, 1267 (11th Cir. 2007).

Article III controversy here: Defendant's continued retention of the unlawful

photograph and video footage and the immediate threat that Plaintiff will be

subjected to the same procedures if her bond is revoked.

### A. The unlawful retention of the booking photograph is a continuing injury.

Defendant's retention of the uncovered booking photograph and security

footage is a "continued substantial burden" on Plaintiff's religious exercise.[62] As

the court held in *Maragha v. City of Chicago*, a brief detention does not render an

RLUIPA claim moot where the deletion or sealing of photographs remains an

available remedy.[63]

Absent relief, these images remain a public record under Georgia law for ten

years.[64] The "very realistic" possibility that the public or jail staff will view this

photograph or security footage creates a recurring violation of Plaintiff's sincerely

held beliefs.[65] Because this injury is redressable through deletion, redaction, or

---

[62] *Omeish*, 616 F. Supp. 3d at 494 (vacated as moot).

[63] *Maragha v. City of Chicago,* 2021 WL 3929221, at *3 (N.D. Ill. Sept. 2, 2021).

[64] *See* O.C.G.A. § 50-18-92; *see also* O.C.G.A. § 35-1-19; *see Georgia Archives*, Local Government Record Retention Schedules, https://www.georgiaarchives.org/records/local_government/schedules/44/P60 (last visited Feb. 10, 2026).

[65] *Omeish*, 616 F. Supp. 3d at 494.

permanent sealing of the records, Plaintiff retains a legally cognizable interest in this action.[66]

**B. Plaintiff faces a real and immediate threat of future injury.**

Ms. Elliott's pending criminal proceedings pose a "real and immediate threat" of harm, not a "conjectural or hypothetical" one.[67] If she violates her bail agreement, the court could revoke her bond and return her to jail.

A return to jail would force Plaintiff to submit to the Defendant's policy and be photographed without her hijab again. A controversy remains live when a plaintiff shows a "sufficient likelihood" that she will face the "allegedly unlawful conduct" again.[68] Because the Defendant has not rescinded his policy or deleted the uncovered images of Plaintiff, this Court may enjoin the policy and prevent future violations.

## CONCLUSION

Sheriff Millsap's actions and policies violated Plaintiff's religious exercise rights under RLUIPA and the First Amendment. Plaintiff satisfies all *Winter* factors for injunctive relief. She faces irreparable harm to her right to free exercise. The balance of equities and public interest supports protecting her rights and holding

---

[66] *Id.* at 495.

[67] *Church v. City of Huntsville*, 30 F.3d 1332, 1337 (11th Cir. 1994).

[68] *Koziara v. City of Casselberry*, 392 F.3d 1302, 1305 (11th Cir. 2004).

Defendant accountable rather than allowing ongoing violations. Each day the images remain accessible, the violation of Plaintiff's religious rights continues.

## **PRAYER FOR RELIEF**

(1)    An order enjoining Defendant from requiring Plaintiff to remove her religious head covering in the presence of men in booking or while incarcerated, absent a compelling security interest;

(2)    Order the Defendant to implement intake policies that comply with the First Amendment and RLUIPA;

(3)    Order the Defendant to delete all booking photographs of Plaintiff without her hijab; and

(4)    Mandate the expungement, deletion, or permanent redaction of all security video footage depicting Plaintiff without her hijab.

Respectfully submitted this 9th day of March, 2026

/s/ Keon N. Grant
Keon Nicholas Grant
Georgia Bar No. 946800
Aaron Edward Butler
Georgia Bar No. 722335
**Council on American-Islamic Relations – Georgia**
P.O. Box 956263
Duluth, GA 30095
Telephone: 470.604.7877
kgrant@cair.com
abutler@cair.com

/s/ James M. Slater
James M. Slater
Georgia Bar No. 169869
Slater Legal PLLC
2296 Henderson Mill Rd. NE #116
Atlanta, GA 30345
Telephone: 404.458.7283
james@slater.legal

/s/ Gerald Weber
Gerald Weber
Georgia Bar No. 744878
The Law Offices of Gerry Weber, LLC
P.O. Box 5391
Atlanta, GA 31107
Telephone: 404.522.0507
wgerryweber@gmail.com

*Counsel for Plaintiff Ivana Elliott*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(D), I hereby certify that the foregoing has been prepared in compliance with Local Rule 5.1(B) in Times New Roman 14-point typeface.

Dated: March 5, 2026

SLATER LEGAL PLLC
2296 Henderson Mill Rd. NE #116
Atlanta, Georgia 30345
(404) 458-7283
james@slater.legal

*/s/ James M. Slater*
James M. Slater
Georgia Bar No. 169869

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF GEORGIA
### ROME DIVISION

IVANA A. ELLIOTT

       *Plaintiff,*

  v.

SHERIFF CLARK MILLSAP, BARTOW
COUNTY SHERIFF'S OFFICE, IN HIS
INDIVIDUAL AND OFFICIAL CAPACITIES,
AND OFFICER JANE DOE, IN HER
INDIVIDUAL CAPACITY ONLY



      *Defendants.*

CIVIL ACTION NO.:

_____

## <u>CERTIFICATE OF SERVICE</u>

I, Keon Grant, hereby certify that on March 9th, 2026, I electronically filed the

foregoing document and that it is available for viewing and downloading from the

Court's CM/ECF system. Paper copies of the filed documents have also been sent

to the named defendant by certified mail.

Sheriff Clark Millsap
Bartow County Sheriff's Office
P.O. Box 476
Cartersville, GA 30121

Respectfully submitted this 9th day of March, 2026

/s/ Keon N. Grant
Keon Nicholas Grant
Georgia Bar No. 946800
Aaron Edward Butler
Georgia Bar No. 722335
**Council on American-Islamic
Relations – Georgia**
P.O. Box 956263
Duluth, GA 30095
Telephone: 470.604.7877
kgrant@cair.com
abutler@cair.com

/s/ James M. Slater
James M. Slater
Georgia Bar No. 169869
Slater Legal PLLC
2296 Henderson Mill Rd. NE #116
Atlanta, GA 30345
Telephone: 404.458.7283
james@slater.legal

/s/ Gerald Weber
Gerald Weber
Georgia Bar No. 744878
The Law Offices of Gerry Weber, LLC
P.O. Box 5391
Atlanta, GA 31107
Telephone: 404.522.0507
wgerryweber@gmail.com

*Counsel for Plaintiff Ivana Elliott*