# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ROME DIVISION

IVANA A. ELLIOTT,

     Plaintiff,

    v.

CLARK MILLSAP, Sheriff of Bartow
County, Ga., in his official capacity only,
and OFFICER JANE DOE, in her
individual capacity only,

     Defendants.

Case No. 4:26-cv-60-WMR

## PLAINTIFF'S VERIFIED FIRST AMENDED COMPLAINT

Ivana A. Elliott ("Plaintiff"), by and through her undersigned counsel, brings this Complaint for equitable relief and damages for violations of the Religious Land Use and Institutionalized Persons Act ("RLUIPA") and the Georgia Religious Freedom Restoration Act ("GRFRA") against Sheriff Clark Millsap ("Sheriff Millsap") of the Bartow County Sheriff's Office ("BCSO") and Officer Jane Doe ("Doe," and collectively with Sheriff Millsap, "Defendants"), and states as follows:

## I. INTRODUCTION

1.      The hijab—including a headscarf and modest, full-body clothing—is worn by many Muslim women as a mandatory symbol of piety and modesty.

2.      Since early 2025, Plaintiff, an observant Muslim, has worn the hijab in the presence of men outside her family as a required expression of her sincerely held religious beliefs.

3.      On April 6, 2025, Sheriff Millsap, through Officer Doe and other BCSO personnel, forced Plaintiff to remove her hijab during booking. This occurred before male officers, despite Plaintiff's repeated explanation that her faith prohibits appearing uncovered before men.

4.      Ignoring her religious objections, several male officers then surrounded her. Faced with escalating pressure and fear of violence, Plaintiff removed her undercap, fully exposing her hair.

5.      Despite her compliance with officers' demands, officers then placed Plaintiff into a holding cell, threw her to the ground, and stripped her naked before male officers while threatening to tase her.

6.      During her 32-hour detention, officers repeatedly forced Plaintiff to remove a makeshift head covering she had fashioned to preserve her religious modesty.

7.      This physical force and compelled exposure caused physical injury, recurrent panic attacks, and psychological harm requiring ongoing treatment.

8.      Hours later, BCSO staff photographed Plaintiff without her hijab against her expressed wishes. That photograph remains in official databases accessible to other law enforcement agencies and other persons under the Georgia Open Records Act and as permitted under O.C.G.A. § 35-1-19.

9.      Being seen without her hijab by men outside her immediate family, including in pictures taken since her decision to wear a hijab, violates Plaintiff's sincerely held religious beliefs.

10.     The retention and potential dissemination of this photograph, along with any security footage, substantially burdens Plaintiff's religious exercise and violates her rights under RLUIPA and the GRFRA. Each time the images are accessed and Plaintiff's uncovered image is seen, it perpetuates the injury initiated on April 6, 2025.

11.     Plaintiff is willing to provide an updated booking photograph that accommodates her religious exercise while satisfying identification requirements.

12.     Plaintiff's criminal charges are pending before the Bartow County Superior Court. This puts her at significant risk of re-detention at the Bartow County Jail and re-exposure to the same illegal treatment.

## II. JURISDICTIONAL FACTS

### A. Plaintiff

13.     Ivana Annette Elliott is a 21-year-old Black Muslim woman. She is both a full-time student and employed, and resides in Atlanta, Georgia.

14.     Plaintiff is not currently incarcerated and therefore is not a "prisoner" under the Prison Litigation Reform Act ("PLRA"). She is not subject to its exhaustion requirement.[1]

### B. Defendants

15.     Defendant Clark Millsap is the elected Sheriff of Bartow County, Georgia, and a constitutional officer pursuant to Ga. Const. art. IX, § 1, ¶ III(a). He serves as the BCSO's final policymaker on jail administration, detainee custody, booking procedures, and the training and supervision of BCSO personnel.

16.     Under O.C.G.A. § 42-4-4(a)(1), Sheriff Millsap had legal custody and control over Plaintiff during her confinement at the Bartow County Jail.[2] He maintains his principal office at 104 Zena Drive, Cartersville, Georgia 30121, and is sued in his official capacity only.

---

[1] 42 U.S.C. § 1997e(a); *Harris v. Garner*, 216 F.3d 970, 974–75 (11th Cir. 2000) (holding that the PLRA's exhaustion requirement applies only to individuals who are "prisoners" at the time suit is filed).

[2] As a constitutional officer, the Sheriff is vested with "such qualifications, powers, and duties as provided by law." Ga. Const. art. IX, § 1, ¶ III(a). Georgia sheriffs

17.     Defendant Officer Jane Doe, pictured below, is a detention officer at the Bartow County Jail, who ordered Plaintiff to remove her hijab and undercap on April 6, 2025. On information and belief, she resides in Bartow County, Georgia. She is sued in her individual capacity only.



**C. Jurisdiction and Venue**

18.     This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 because this action arises under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.*

---

possess final policymaking authority over jail administration and inmate custody. *Bd. of Comm'rs of Randolph Cnty. v. Wilson*, 260 Ga. 482, 482 (1990); *Manders v. Lee*, 338 F.3d 1304, 1311 (11th Cir. 2003).

19.     This Court has supplemental jurisdiction of the Georgia Religious Freedom Restoration Act claim, O.C.G.A. § 50-15A *et seq.*, pursuant to 28 U.S.C. § 1367, as it is so related to the claim under this Court's original jurisdiction that it forms part of the same case or controversy.

20.     This Court is authorized to grant declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202, and Federal Rules of Civil Procedure 57 and 65.

21.     This Court has personal jurisdiction over Defendants because they reside in Georgia and the events occurred in this District.

22.     The Bartow County Jail is an "institution" under 42 U.S.C. § 2000cc-1(a) and, at all times material hereto, received—and continues to receive—federal financial assistance through direct intergovernmental funding, which consisted of local, state, and federal funds, including funds from the Department of Justice and Department of Homeland Security. During all times relevant and material hereto, the Bartow County Jail and Sheriff received additional funding through the Bartow County General Fund, which also received—and continues to receive—intergovernmental funds, including federal funds, including through the American Rescue Plan Act of 2021. The Bartow County Jail's receipt of federal funds triggers RLUIPA's protections.

6

23. The Bartow County Jail meets the definition of "government" under O.C.G.A. § 50-15A-2(3).

24. Venue is proper in the Northern District of Georgia, Rome Division, pursuant to 28 U.S.C. § 1391(b).

## III. FACTUAL ALLEGATIONS

### A. Background

25. Plaintiff Ivana Elliott is a 21-year-old Black woman residing in Atlanta, Georgia. She is a lifelong observant Muslim.

26. Plaintiff's sincerely held religious beliefs require her to wear a hijab—including a headscarf and modest, full-body clothing—in the presence of men outside her immediate family. This practice is mandatory in her own faith and integral to her religious identity.

27. Any viewing of Plaintiff without her hijab, whether in person or via photographs, is a violation of and substantial burden on this sincerely held belief.

28. Plaintiff has adhered to this requirement since early 2025. Her observance predates this action and reflects the continuity and sincerity of her religious commitment.

29.    Although Plaintiff's previous driver's license featured a different photograph, her current license reflects her consistent religious practice.[3]

30.    Forcing Plaintiff to appear uncovered and recording her image without her hijab burdened her religious exercise. By retaining these photographs and security footage, Defendants continue to violate her rights under RLUIPA and GRFRA.

**B. Incident at Issue**

31.    On April 6, 2025, Officer Alfonso of the Cartersville Police Department arrested Plaintiff on her way to her grandmother's house during a traffic stop on Interstate 75.[4]

32.    At approximately 5:26 a.m., Plaintiff arrived at the Bartow County Jail for intake and booking.

33.    Plaintiff encountered several male officers, a female nurse, and one female detention officer—Jane Doe. When Plaintiff requested to be booked by a female officer, the staff claimed no female officers were available. Plaintiff later saw several other female officers on the premises.

---

[3] Ex. C (Redacted photograph of Ms. Elliott's current driver's license).

[4] Ex. B (Redacted incident report from Ms. Elliott's arrest).

34.  Officer Doe ordered Plaintiff to remove her hijab for a booking photograph. Plaintiff removed the outer scarf but kept her undercap to conceal her hair.[5]

35.  When Officer Doe next ordered her to remove the undercap, Plaintiff explained her religious objection to appearing uncovered before men and requested a private intake. Officer Doe denied the request.

36.  Without conducting an individualized assessment, Officer Doe incorrectly asserted that Plaintiff's hijab was associated with Ramadan—which had ended—and denied accommodation.

37.  Though Plaintiff continued to object verbally, she offered no physical resistance. Multiple male officers then surrounded her.[6]

38.  Fearing escalation and physical violence, Plaintiff removed her undercap.[7]

39.  Despite Plaintiff's compliance, BCSO officers physically forced her into a cell.

---

[5] Video of Ms. Elliott's Booking at 4:20. (Because the video shows Plaintiff uncovered and the relief sought here is to prevent further dissemination of the video depicting Plaintiff without her head covering, Plaintiff will provide it for *in camera* review at the Court's request, but does not submit it as an exhibit to the complaint.)

[6] *Id.* at 13:20.

[7] *Id.*

40.   Inside the cell, officers forced Plaintiff to the ground and stripped her naked before male officers. She remained nude on the floor for approximately five minutes while the men watched.

41.   Officers threw spare clothes at Plaintiff but threatened to tase her if she moved. Plaintiff remained motionless, naked, and humiliated.

42.   Once they exited, Plaintiff dressed and fashioned a makeshift head covering from the provided shorts to preserve her religious modesty.

43.   Male officers performed the strip search and exposed her without any individualized assessment that Plaintiff posed a security threat and without implementing privacy measures, including shielding her from male officers.

44.   Plaintiff remained in the cell for approximately four hours before officers returned to the cell.

45.   Despite Plaintiff's protests, officers then forcibly removed her makeshift hijab and moved her to yet another cell without completing her booking.

46.   During this detention, officers also denied Plaintiff access to a restroom, directing her to use a hole in the floor. To avoid further exposing her body, Plaintiff attempted to refrain from using the toilet despite physical discomfort.

47.   Unable to endure the delay further, Plaintiff urinated on herself, suffering profound humiliation.

10

48.     Eight hours after her arrival, officers finally booked and photographed Plaintiff—still without her hijab or undercap and without her consent.[8]

49.     Officers then transferred Plaintiff to a cell with a toilet and sleeping mats, proving such accommodations were available but withheld.

50.     Plaintiff was released at approximately 1:34 p.m. on April 7, 2025.

## C. Ongoing Harm

51.     During and after her detention, Plaintiff suffered multiple panic attacks and required intensive outpatient therapy four times weekly. She also sought urgent medical treatment, including a post-release MRI, for shoulder pain, significant bruising, and abnormal menstrual bleeding. These injuries are documented in medical and police records.

52.     By photographing Plaintiff without her hijab, Defendants extended the religious violation beyond her detention and exacerbated the forced exposure of her hair and body. The continued retention of these records and broad access to these records prolong the injury and continue to burden Plaintiff's mental and emotional well-being.

53.     Plaintiff's uncovered booking photograph remains in BCSO's database, accessible to local, state, and other government agencies and others under the Georgia Open Records Act and subject to O.C.G.A. § 35-1-19. In fact,

---

[8] Ex. A (Redacted copy of Ms. Elliott's booking photo).

11

Sheriff Millsap has already disclosed the photograph and booking sheet under the Open Records Act.[9]

54.   Because her criminal charges remain pending before the Bartow County Superior Court, Plaintiff faces a realistic risk of re-booking and re-detention at the Bartow County Jail, and re-exposure to the same illegal practices pending a judge's decision.

55.   She suffers ongoing distress because photographs and videos of her without her hijab exist and may be viewed by men at any time. This awareness impairs her mental and emotional well-being and constitutes an irreparable injury.

56.   Plaintiff's sincerely held religious beliefs prohibit her from being seen uncovered by unrelated men, both in person and in any sort of digital media captured after her decision to wear a hijab.

57.   Defendant's retention of booking photographs and security footage depicting Plaintiff without her religious covering continues to burden her religious exercise. This maintenance violates her rights under RLUIPA and GRFRA.

---

[9] *Id.* (The booking card was produced to Plaintiff's counsel with the uncovered photograph affixed. The copy attached hereto has been redacted by Plaintiff's counsel to prevent further dissemination of the photograph.)

## IV. CLAIMS FOR RELIEF

## COUNT I

## <u>Violation of the Religious Land Use and Institutionalized Persons Act</u>
**(against all Defendants)**

58.     Plaintiff repeats and re-alleges paragraphs 1-57 above as though fully set forth herein.

59.     Plaintiff's practice of wearing a hijab is a "religious exercise" under RLUIPA.[10]

60.     Defendants substantially burdened Plaintiff's religious exercise by forcing her to remove her hijab and undercap, strip-searching her in the presence of male officers, and taking her booking photograph without her religious covering. Defendants continue to substantially burden Plaintiff's religious exercise by retaining her uncovered booking photograph, which remains available for viewing to others in law enforcement and otherwise. These actions forced Plaintiff to

---

[10] *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 725 (2014) ("[I]t is not for us to say that [a religious belief] is mistaken or insubstantial."); *Benning v. Georgia*, 391 F.3d 1299, 1313 (11th Cir. 2004) (rejecting the State's attempt to question the validity or importance of an inmate's religious practice under RLUIPA).

violate her sincerely held beliefs at the time of the incident and continue to burden her sincerely held belief that no unrelated man can see her uncovered.[11]

61.     RLUIPA prohibits the government from imposing a substantial burden on religious exercise unless it demonstrates that the burden is the least restrictive means of furthering a compelling interest.[12] This protection is vital, as a detainee, Plaintiff was entirely dependent on the government's permission to practice her faith.[13]

62.     Sheriff Millsap's policies fail this "exceptionally demanding" least-restrictive-means test. Even assuming a compelling interest in inmate identification,[14] Defendants cannot show that forced uncovering was the least restrictive means of advancing that interest.

---

[11] *See Khatib v. County of Orange*, 639 F.3d 898, 906 (9th Cir. 2011) (Gould, J., concurring) (recognizing that the forcing a Muslim woman to appear uncovered before unrelated men is "precisely the kind of 'mischief" intended to be remedied by RLUIPA).

[12] 42 U.S.C. § 2000cc-1(a); *Holt v. Hobbs*, 574 U.S. 352, 360–61 (2015).

[13] *Cutter v. Wilkinson*, 544 U.S. 709, 721 (2005) (explaining that RLUIPA protects institutionalized persons who are "unable freely to attend to their religious needs").

[14] O.C.G.A. § 42-4-7(a); *Knight v. Thompson*, 796 F.3d 1289, 1292 (11th Cir. 2015) (recognizing the State's interest in "quickly identify[ing] inmates," while requiring it to demonstrate that its policy is the least restrictive means of furthering that interest).

63.     Defendants readily rejected available alternatives that would have satisfied security and identification needs, including photographing Plaintiff in her hijab with her face fully visible, promptly restoring her head covering after a brief inspection, and conducting searches and clothing removal in private, female-only settings.

64.     Forced religious exposure is not a security necessity; it is an outlier policy. The U.S. Department of State and the State of Georgia authorize hijabs in official identification photographs.[15] Major law enforcement agencies, including the NYPD, routinely accommodate religious head coverings during booking.[16] Since these alternatives succeed in high-security environments, general appeals to identification cannot justify stripping individuals of their religious clothing.[17]

---

[15] *See* U.S. Dep't of State, *Passport Photos*, https://travel.state.gov/content/travel/en/passports/how-apply/photos.html (last visited Mar. 2, 2026); *see also* 8 Foreign Affs. Manual § 402.1-4(c)(3) (2024) (authorizing head coverings for "recognized, traditional religious attire" worn continuously in public).

[16] Ganesh Setty, *NYPD Will Now Allow People to Wear Religious Head Coverings in Booking Photos*, CNN (Nov. 11, 2020), https://www.cnn.com/2020/11/10/us/nypd-head-coverings-hijabs/index.html; *see also* U.S. Dep't of Just., *Report on the 20th Anniversary of the Religious Land Use and Institutionalized Persons Act* 10 (2020) (detailing federal enforcement actions against jurisdictions refusing to accommodate religious head coverings).

[17] *See Holt*, 574 U.S. at 364–65 (comparable accommodations elsewhere defeat least-restrictive-means defenses); *Al-Kadi v. Ramsey Cnty.,* No. 16-cv-2642, 2019 WL 2448648, at *11 (D. Minn. June 12, 2019) (rejecting safety defense where jail

65.     Photographing Plaintiff as she ordinarily appears would better serve identification interests.

66.     Defendants' refusal to adopt these standard religious accommodations indicates a custom or practice of requiring head-covering removal and conducting intrusive searches without individualized religious accommodation or privacy safeguards.

67.     Defendants acted with actual and expressed knowledge of Plaintiff's religious requirements. Their rejection of readily available safeguards was the moving force behind Plaintiff's physical and psychological injuries, for which she seeks all appropriate relief.[18]

68.     Defendants acted with deliberate indifference to Plaintiff's religious rights by maintaining and enforcing the following policies, practices, and customs:

---

forced hijab removal in front of male officers); *Omeish v. Kincaid*, 616 F. Supp. 3d 486, 497 (E.D. Va. 2022) (photographing plaintiff in a hijab satisfies identification interests), vacated as moot, 86 F.4th 546 (4th Cir. 2023).

[18] The Supreme Court granted certiorari to consider whether RLUIPA authorizes individual-capacity damages in *Landor v. Louisiana Department of Corrections*, 145 S. Ct. 2814 (2025) (mem.), and heard argument on November 10, 2025. The United States, as amicus curiae, argued that RLUIPA's "appropriate relief" language should be interpreted consistently with *Tanzin v. Tanvir*, 592 U.S. 43 (2020), which held that RFRA permits individual-capacity damages. A decision is expected by June 2026. Plaintiff reserves all rights to amend the complaint following that decision to add a damages claim against Sheriff Millsap following that decision.

16

    a.    Failing to adequately train, supervise, and control officers regarding the legal requirement to accommodate religious practices, including the wearing of the hijab in booking and incarceration;

    b.    Failing to establish specific procedures that allow detainees to maintain religious head coverings during the booking and housing process;

    c.    Failing to train and supervise officers on the proper, least-restrictive methods for conducting security searches of religious head coverings;

    d.    Failing to establish protocols to protect detainees from the arbitrary deprivation of religious articles; and,

    e.    Failing to implement and enforce "sight-sound" or "gender-concordant" privacy protocols to prevent male officers and detainees from viewing female Muslim detainees while their hair, heads, or bodies are exposed during searches or after the forced removal of a hijab.

69.    Plaintiff's criminal charges that resulted in this detention remain pending, putting her at well-founded risk of being re-exposed to BCSO and its refusal to protect religious exercise.

17

70.     Plaintiff has no control over her potential return to the Bartow County Jail as sentencing is at the discretion of the judge overseeing her case.

71.     Defendants' retention of the uncovered photograph and security footage—accessible through searchable databases and the Georgia Open Records Act—constitutes an ongoing, irreparable injury.

72.     Plaintiff's uncovered image can be viewed by unrelated men at any time. Each occurrence substantially burdens her sincerely held religious belief that she cannot be seen by unrelated men without her hijab, in person or through digital media.[19]

73.     This ongoing harm is redressable only by a permanent injunction mandating the record's destruction or its replacement with a religiously observant photograph.

## COUNT II

### Violation of the Georgia Religious Freedom Restoration Act
### (against all Defendants)

74.     Plaintiff repeats and re-alleges paragraphs 1-57 above as though fully set forth herein.

---

[19] *Burwell*, 537 U.S. at 725; *Benning*, 845 F.Supp.2d at 1377; *Omeish*, 616 F.Supp.3d at 494 ("no genuine dispute that the taking and retention of photographs during [] booking" of a Muslim woman without her hijab on is an "institutional act that violated a person's . . . sincerely held religious beliefs").

75. Defendants' decision to forcibly remove Plaintiff's hijab and force her to remain uncovered for her 30+ hour detention and to photograph her without any covering substantially burdened her religious exercise without a compelling justification.

76. In 2025, the Georgia General Assembly voted to enact the Georgia Religious Freedom Restoration Act to apply the federal Religious Freedom Restoration Act's, 42 U.S.C. § 2000bb *et seq.*, protections and to state and local governments.[20] This bill was signed into law on April 4, 2025.

77. The General Assembly's stated intent for GRFRA review to reflect federal RFRA's standards reason that federal RFRA analysis should apply.

78. The GRFRA and RFRA prohibit a government from substantially burdening an individual's religious exercise unless the government can prove that the burden furthers a compelling government interest in the least restrictive way possible.[21]

---

[20] Georgia Religious Freedom Restoration Act, S.B. 36 § 2(3), 158th Gen. Assemb., Reg. Sess. (Ga. 2025).

[21] O.C.G.A. § 50-15A-1(a-b); *City of Boerne v. Flores*, 521 U.S. 507, 515-16 (1997).

79.     The decision to wear a hijab and remain covered in front of unrelated men – both in person and in images – is a significant part of Plaintiff's sincerely held religious belief.

80.     Defendants' acts, policies, and customs, while Plaintiff was confined in the Bartow County Jail substantially burdened her religious exercise of wearing a hijab whenever she is in the presence of unrelated men. The photographs and surveillance footage that were taken and are available for distribution continue to burden this religious exercise.

81.     Defendants' acts, policies, and customs, are not the least restrictive means to further any interest in identifying incarcerated individuals. Defendants ignored the fact that other institutions including the United States Department of State and the New York Police Department allow for religious head coverings in their photographs so long as their faces remain visible.[22]

82.     An uncovered photograph also does not match Plaintiff's everyday appearance. Therefore, any government interest in identification is undercut by Defendants' acts, policies, and customs.

---

[22] *Supra* n.15-16.

83. Defendants' retention of the uncovered photograph and security footage—accessible through searchable databases and the Georgia Open Records Act—constitutes an ongoing, irreparable injury.

84. Plaintiff's uncovered image can be viewed by unrelated men at any time. Each occurrence substantially burdens her sincerely held religious belief that she cannot be seen by unrelated men without her hijab, in person or through digital media.[23]

85. This ongoing harm is redressable only by a permanent injunction mandating the record's destruction or its replacement with a religiously observant photograph.

## V. TRIAL DEMANDED

The Plaintiff hereby demands a trial by jury for all issues triable.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor and grant the following relief:

A. Declaratory judgment that Defendants violated RLUIPA and GRFRA by requiring Plaintiff to remove her hijab, undercap, or clothing in the

---

[23] *Burwell*, 537 U.S. at 725; *Benning*, 845 F.Supp.2d at 1377; *Omeish*, 616 F.Supp.3d at 494 ("no genuine dispute that the taking and retention of photographs during [] booking" of a Muslim woman without her hijab on is an "institutional act that violated a person's . . . sincerely held religious beliefs").

21

presence of men, whether for a booking photograph or other police procedures, and by maintaining said photographs;

B.  Injunctive relief:

    a.  Enjoining Defendant Sheriff Millsap, in his official capacity, from requiring Plaintiff to remove her religious head covering in the presence of male officers, absent a compelling and particularized security justification;

    b.  Requiring Defendant Sheriff Millsap to permit Plaintiff to wear her hijab during booking photographs, provided her full face remains visible for identification purposes;

    c.  Requiring that any inspection or removal of Plaintiff's religious head covering be conducted in private and, when feasible, by female officers;

    d.  Requiring removal of Plaintiff's uncovered booking photograph from public-access systems and official databases and replacement with a photograph taken in compliance with her religious beliefs;

    e.  Ordering that, to the extent deletion is not feasible, the uncovered photograph be permanently sealed or restricted from public dissemination; and

f.   Implement a policy change at Bartow County Sheriff's Office (1) prohibiting officers and staff from taking booking photographs of Muslim women without their hijab and (2) requiring that officers and staff honor requests to be searched and/or stripped privately, and with female officers, when possible.

C.   An award of appropriate nominal, compensatory, and punitive damages against Defendant Jane Doe as appropriate under RLUIPA and GRFRA, via 42 U.S.C. § 2000bb-1;

D.   Award reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988, O.C.G.A. § 13-6-11, O.C.G.A. § 50-15A-3, and other applicable law;

E.   Grant such other and further relief as this Court deems just and proper.

Respectfully submitted this 22nd day of May, 2026

/s/ Keon N. Grant
Keon Nicholas Grant
Georgia Bar No. 946800
**Council on American-Islamic Relations – Georgia**
P.O. Box 956263
Duluth, GA 30095
Telephone: 470.604.7877
kgrant@cair.com

/s/ James M. Slater
James M. Slater
Georgia Bar No. 169869
Slater Legal PLLC
2296 Henderson Mill Rd. NE #116
Atlanta, GA 30345
Telephone: 404.458.7283
james@slater.legal

/s/ Gerald Weber
Gerald Weber
Georgia Bar No. 744878
The Law Offices of Gerry Weber, LLC
P.O. Box 5391
Atlanta, GA 31107
Telephone: 404.522.0507
wgerryweber@gmail.com

*Counsel for Plaintiff Ivana Elliott*

21

## **<u>VERIFICATION</u>**

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the

facts contained in the foregoing Verified Amended Complaint are true and correct.

Executed on May 21, 2026, in Atlanta, Georgia.

_____
Ivana Elliott