IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | | |
|---|---|---|
| IVANA A. ELLIOTT, | ) | |
| | ) | CIVIL ACTION FILE NO. |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | 4:26-cv-00060-WMR |
| SHERIFF CLARK MILLSAP, | ) | |
| | ) | |
| Defendant. | ) | |

### SHERIFF MILLSAP'S BRIEF IN SUPPORT OF HIS SECOND MOTION TO DISMISS

COMES NOW BARTOW COUNTY SHERIFF CLARK MILLSAP in the above-styled action, and, pursuant to Rule 12 (b) of the Federal Rules of Civil Procedure and the Local Rules, files this Brief in Support of his Motion to Dismiss the Amended Complaint (the "Complaint"), as follows:

### INTRODUCTION AND FACTUAL OVERVIEW

This is an inmate religious exercise case arising under the federal Religious Land Use and Institutionalized Persons Act (RLUIPA), based on the Plaintiff's pretrial detention in the Bartow County Jail. The amended complaint added a state law claim in Count 2. In substance, the Complaint alleges that Plaintiff was an observant Muslim woman who sues about being searched, photographed and video recorded at the Jail without her religious clothing. Doc. 13 at ¶¶ 56, 71. The material allegations of the complaint are summarized below.

On April 6, 2025, a City of Cartersville officer arrested Plaintiff during a traffic stop. Doc. 13 at ¶ 31. Plaintiff states she is a "Black Muslim woman" who due to religious belief wears a "hijab in the presence of men outside her family." Doc. 13 at ¶ 2, 13. The complaint says a "hijab" is a "headscarf and modest, full-body clothing." *Id.* at ¶ 1.

At the Bartow County Jail, unnamed officers "forced Plaintiff to remove her hijab during booking" and she removed her "undercap" over her religious objection. Doc. 13 at ¶¶ 3, 35, 38. At some point Plaintiff was taken into a holding cell and as part of a "strip search" had her clothing removed by male officers. Doc. 13 at ¶¶ 5, 40, 43. After that, Plaintiff was given other clothing and covered herself with it. *Id.* at ¶¶ 41-42.

Eight hours after her arrival, "BCSO staff photographed Plaintiff without her hijab against her expressed wishes." Doc. 13 at ¶ 8, 48. Plaintiff was released on the early afternoon of April 7, 2025. *Id.* at ¶ 50.

Plaintiff sues Bartow County Sheriff Clark Millsap, individually and in his official capacity. Sheriff Millsap is the elected Sheriff of Bartow County, Georgia who serves as the BCSO's final policymaker on jail administration, detainee custody, booking procedures, and the training and supervision of BCSO personnel. *Id.* at ¶ 15. The operative complaint does not claim that Sheriff Millsap had any personal involvement in the incident underlying the case.

For the reasons discussed herein, Sheriff Millsap is entitled to dismissal.

## ARGUMENT AND CITATIONS TO AUTHORITY

For the reasons discussed below, the complaint fails to state a claim; Plaintiff lacks standing to seek injunctive and declaratory relief; Sheriff Millsap is entitled to qualified immunity and official immunity against Plaintiff's individual claims, to the extent she seeks money damages against him; and the Eleventh Amendment bars claims against Sheriff Millsap in his official capacity.

I.    **THE COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

**A.  RLUIPA Does Not Provide for Individual Liability**

RLUIPA does not allow for claims against a defendant in his individual capacity. 42 U.S.C. § 2000cc-2(a); Smith v. Allen, 502 F.3d 1255, 1266 (11th Cir. 2007), *abrogated on other grounds by* Sossamon v. Texas, 563 U.S. 277 (2011). Beyond that, RLUIPA does not allow a claim against a person who had no personal participation in the claimed RLUIPA violation. See Hoke v. Lyle, No. 6:16-cv-45, 2016 U.S. Dist. LEXIS 106912, 2016 WL 4197590 at *6 (S.D. Ga. Aug. 8, 2016) (collecting cases), R&R adopted, 2016 U.S. Dist. LEXIS 128332, 2016 WL 5110256 (S.D. Ga. Sept. 20, 2016). Both grounds require dismissal of the RLUIPA claim against Sheriff Millsap in his individual capacity.

**B.  The Complaint Does Not State a Valid Claim About Jail Policy**

Assuming for the sake of argument that the Court has jurisdiction to entertain a challenge to a current jail policy by a plaintiff who is not an inmate, the

challenge fails. The Supreme Court requires review of the reasonableness of a jail regulation for whether it "bear[s] a rational relation to legitimate penological interests." Overton v. Bazzetta, 539 U.S. 126, 132, 123 S. Ct. 2162, 2167 (2003).

Courts employ four factors in this inquiry: (1) whether there is a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) "the impact accommodation ... will have on guards and other inmates, and on the allocation of prison resources generally"; (4) whether there are "ready alternatives that could fully accommodate[ ] the prisoner's rights at *de minimis* cost to valid penological interests." Turner v. Safley, 482 U.S. 78, 89-91, 107 S.Ct. 2254  (1987).

"The burden … is not on the [defendant(s)] to prove the validity of prison regulations but on the prisoner to disprove it." Overton, 539 U.S. at 132, 123 S. Ct. 2162; O'Lone v. Estate of Shabazz, 482 U.S. 342, 350, 107 S.Ct. 2400 (1987) ("By placing the burden on prison officials to disprove the availability of alternatives, the approach articulated by the Court of Appeals fails to reflect the respect and deference that the United States Constitution allows for the judgment of prison administrators."); Turner, 482 U.S. at 91, 107 S.Ct. 2254.

Here, Plaintiff seeks relief concerning creation of images of her without her hijab in connection with a jail intake process. Doc. 13. The complaint does not provide any basis to find that this kind of claim survives the Turner test. See

4

Pressley v. Madison, No. 2:08-CV-0157-RWS, 2010 U.S. Dist. LEXIS 133791, at *6 (N.D. Ga. Dec. 17, 2010) (dismissing claim based on prohibition of hijab in jail); J.H. v. Bratton, 248 F. Supp. 3d 401, 409 (E.D.N.Y. 2017) (finding that a policy "requiring arrestees to remove head coverings for post-arrest photographs" is "reasonably related to the City's obvious and legitimate interest in having a photographic record of arrestees from which a later identification can be made"); Safouane v. Barnard, No. 00-621, 2003 WL 27385241, at *6 (W.D. Wash. Aug. 22, 2003) ("Accordingly, Defendants' motion for summary judgment on this claim should be granted because the policy that did not allow Sarah Safouane to wear her hijab in the jail is logically related to legitimate penological interests, and does not amount to a constitutional violation.").

There are well-recognized, legitimate reasons why detainees have to be photographed without head coverings, and legitimate reasons why detainees must wear jail uniforms. Plaintiff bears the burden to show that her case was so special that the normal rules did not apply to her. As reflected in the caselaw above, that is a bigger lift than Plaintiff can manage.

### C.  The Complaint Does Not State a Valid Claim Under Georgia Law

Count 2 asserts a claim under the "Georgia Religious Freedom Restoration Act" ("GRFRA") which is codified at O.C.G.A. § 50-15A-1 *et seq*. There is no viable claim against Sheriff Millsap under GRFRA.

**1.  Sheriff Millsap Had No Individual Involvement**

The GRFRA seemingly has no interpretive case law. That said, there is no way that it provides a cause of action against an officer who had nothing to do with the incident in question. O.C.G.A. § 50-15A-1 prohibits  "government" from burdening religious exercise in violation of the GRFRA unless certain conditions are met. Subsection (c) creates a cause of action "against government."

While it appears that "government" can mean an individual officer, there is no basis for a cause of action against an individual officer who had no personal role in the claimed GRFRA violation. Such an uninvolved officer could not have burdened religious exercise in violation of GRFRA.

Two principles support this conclusion. First, statutes that create liability where none previously existed or abrogate common law principles are strictly construed. Delta Airlines, Inc. v. Townsend, 279 Ga. 511, 512, 614 S.E.2d 745, 747 (2005); Oberdorfer v. Smith, 102 Ga. App. 336, 339, 116 S.E.2d 308, 310 (1960). Strict construction limits GRFRA liability to those specifically involved with the claimed violation.

Second, a statutory cause of action is presumptively limited to allow liability only against a defendant who proximately caused the claimed injury. This principle limits the scope of defendants who may be sued. Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 129-132 (2014) (holding that a plaintiff

6

must show that their injury falls within the "zone of interests" protected by the statute and that the injury was proximately caused by the defendant's conduct).

Accordingly, Plaintiff has no individual cause of action against Sheriff Millsap under GRFRA.

### 2. Ga. Const. art. I, § 2, ¶ V(b) Requires Dismissal of this Action

Where a plaintiff brings an action for declaratory or injunctive relief against a Georgia state entity like Sheriff Millsap in his official capacity, the action must be brought "exclusively" against the entity. State v. SASS Grp., LLC, 315 Ga. 893, 885 S.E.2d 761, 764 (2023); Ga. Const. art. I, § 2, ¶ V(b). This action violates that rule because it is brought against individual Defendants. For that reason the entire case must be dismissed. SASS Grp., LLC, 315 Ga. at 904-905.

## II. PLAINTIFF LACKS STANDING FOR DECLARATORY OR INJUNCTIVE RELIEF

To have standing, a plaintiff must first show that she "suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." Lujan v. Defenders of Wildlife, 504 U.S. 555, 112 S.Ct. 2130, 2136 (1992) (internal quotations and citations omitted). An injury in fact "cannot be an abstract injury." Koziara v. City of Casselberry, 392 F.3d 1302, 1305 (11th Cir.2004).

The Complaint says Plaintiff is no longer an inmate in the Bartow County Detention Center (Doc. 13 at ¶ 14), so she lacks standing to pursue injunctive or

declaratory relief about some burden to her religious practice in jail. City of Los Angeles v. Lyons, 461 U.S. 95, 106, 103 S. Ct. 1660 (1983); Smith v. Allen, 502 F.3d 1255, 1267 (11th Cir. 2007), *abrogated on other grounds by* Sossamon v. Tex., 563 U.S. 277, 131 S. Ct. 1651, 179 L. Ed. 2d 700 (2011) ("The general rule in our circuit is that . . . release of a prisoner from prison will moot that prisoner's claims for injunctive and declaratory relief . . . [as] once the prisoner has been released, the court lacks the ability to grant injunctive relief and correction the conditions of which the prisoner complained."); Spears v. Thigpen, 846 F.2d 1327, 1328 (11th Cir.1988) (holding that claims regarding treatment at a facility at which prisoner was no longer incarcerated were moot); Zatler v. Wainwright, 802 F.2d 397, 399 (11th Cir. 1986); Wahl v. McIver, 773 F.2d 1169, 1173 (11th Cir.1985) (explaining that an inmate's claim for injunctive relief under § 1983 action is moot once the inmate has been transferred); Kellerman v. Askew, 541 F.2d 1089, 1090 n. 1 (5th Cir.1976) (prisoner's motion for equitable relief deemed moot due to his having been paroled); Lamb v. Bumpus, 52 F. App'x 740, 741 (6th Cir. 2002); Green v. Branson, 108 F.3d 1296, 1300 (10th Cir.1997); **Pressley v. Madison**, No. 2:08-CV-0157-RWS, 2010 U.S. Dist. LEXIS 133791, at *6 (N.D. Ga. Dec. 17, 2010) (dismissing Muslim woman's hijab claim, explaining "Plaintiff is no longer incarcerated at the Detention Center, and has in fact been released from incarceration altogether. Therefore, Plaintiff's claims seeking injunctive relief shall be dismissed as moot.").

Notably, Plaintiff's claimed risk of future arrest and booking is not sufficiently "real and immediate" to establish standing because the Court "must assume that plaintiff 'will conduct [her] activities within the law and so avoid . . . exposure to the challenged course of conduct.' " Sumpter v. Wayne Cnty., 868 F.3d 473, 491 (6th Cir. 2017)  (quoting O'Shea v. Littleton, 414 U.S. 488, 494, 497, 94 S. Ct. 669 (1974)). In regard to images of Plaintiff on file with the Sheriff's Office, those images have absolutely nothing to do with Plaintiff's current exercise of her religion, which is unimpeded by any photo or video maintained at the Bartow County Detention Center.

Accordingly, Plaintiff's plea for injunctive and declaratory relief must be dismissed.

## III.  QUALIFIED IMMUNITY BARS PLAINTIFF'S INDIVIDUAL FEDERAL CLAIM AGAINST SHERIFF MILLSAP

According to the operative Complaint, Plaintiff asserts federal claims against Sheriff Millsap under the RLUIPA.  Doc. 13.

 "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002).  There should be no question that Sheriff Millsap acted within his discretionary duties

with regard to policymaking, which is the sole basis for the claim against him.[1]
Therefore, "the burden of persuasion [to defeat qualified immunity] is on the
Plaintiff." Montoute v. Carr, 114 F.3d 181, 184 (11th Cir. 1997).

Plaintiff does not claim that Sheriff Millsap was personally involved in her
detention, and she sues Sheriff Millsap solely as a policymaker. For supervisor
liability, there must be an underlying violation of federal law. Gish v. Thomas, 516
F.3d 952, 955 (11th Cir.2008) (affirming summary judgment for sheriff in jail case
on the ground that no constitutional violation was shown). For the reasons
explained in § I, the Complaint fails to state a federal claim. For this reason alone
the claims against Sheriff Millsap should be dismissed. Aside from that fatal
problem, as discussed below, the Complaint does not allege facts sufficient to
support a supervisor liability claim.

## A. The Complaint Fails to State a Supervisor Liability Claim

In the absence of personal participation or ordering illegal conduct—neither
of which is alleged with regard to Sheriff Millsap—a supervisor has no federal
duty to train, supervise or change policy, absent clear notice to the supervisor that

---

[1] See Doc. 13 at ¶ 15; Pressley v. Madison, No. 2:08-CV-0157-RWS, 2010 U.S. Dist. LEXIS 133791, at *8 (N.D. Ga. Dec. 17, 2010) (holding that jail officials acted within their discretionary authority when they required the plaintiff to remove her hijab); Harvey v. Nichols, 260 Ga.App. 187, 191, 581 S.E.2d 272, 276-77 (2003); Lowe v. Jones County, 231 Ga.App. 372, 373 (3), 499 S.E.2d 348 (1998); Bontwell v. Department of Corrections, 226 Ga.App. 524, 486 S.E.2d 917 (1997) (level of supervision and training provided to subordinate officers is discretionary function); see also Harbert Intern., Inc. v. James, 157 F.3d at 1283 (looking to state law to determine whether the relevant function is within officer's discretionary authority).

some remedy is constitutionally mandated. More specifically, Plaintiff is required to allege (1) actual prior constitutional deprivations connected to an acknowledged policy or practice, that were (2) actually brought to the attention of Sheriff Millsap with sufficient detail to reveal unconstitutional conduct, and (3) which were "obvious, flagrant, rampant, and of continued duration." Brown v. Crawford, 906 F.2d 667, 671 (11th Cir.1990) (emphasis supplied).  The Complaint has no such allegations.

Instead, the Complaint alleges a one-off incident where the Plaintiff feels her religious rights were transgressed. Nothing alleged in the complaint amounts to a policy or practice that facially violates RLUIPA. More importantly, there is no allegation that Sheriff Millsap knew that a jail policy or practice caused a pattern of RLUIPA violations that were "obvious, flagrant, rampant, and of continued duration." Brown v. Crawford, 906 F.2d 667, 671 (11th Cir.1990) (emphasis supplied).   Where only a single incident underlies the supervisor liability claim and there is no personal involvement by the Defendant, the claim fails as a matter of law. Ingram v. Kubik, 30 F.4th 1241, 1254 (11th Cir. 2022) ("allegations of a single incident of unconstitutional conduct cannot state a claim for supervisory liability, even when the conduct involves several subordinates"); Piazza v. Jefferson Cty., Alabama, 923 F.3d 947, 958 (11th Cir. 2019) (same).  That is the case here. Dismissal is required.

### B.    Sheriff Millsap Did Not Violate Clearly Established Law

Plaintiff has the burden to show that "it would be clear to [Sheriff Millsap]

that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202, 121 S.Ct. 2151, 2156 (2001) (emphasis supplied). This requires proof that "existing precedent … placed the statutory or constitutional question beyond debate." Reichle v. Howards, 132 S.Ct. 2088, 2089 (2012) (emphasis supplied).  It appears that no such precedent exists, and in fact binding precedent supports Sheriff Millsap. Piazza, 923 F.3d at 958.

As Judge Story explained in 2010,

> [T]here is a legitimate, rational relationship between prohibiting persons from wearing any form of headwear and the need to maintain security, discourage potential gang activity, and facilitate the identification of inmates held at the Detention Center. In addition, the Court has found no authority from the Supreme Court, the Eleventh Circuit, or the Georgia Supreme Court which clearly establishes a right to adorn religious headwear in prison.

Pressley v. Madison, No. 2:08-CV-0157-RWS, 2010 U.S. Dist. LEXIS 133791, at *9 (N.D. Ga. Dec. 17, 2010). On this point the law has not changed since 2010.

While Plaintiff may quibble with how officers handled her religious objection, that is something far different from showing that *Sheriff Millsap* was deliberately indifferent to a pattern of "obvious, flagrant, rampant" RLUIPA violations involving religious accommodation of female Muslim inmates who want to conceal their hair or other body parts from male officers in connection with incarceration. See Brown v. Crawford, 906 F.2d 667, 671 (11th Cir.1990).

The upshot is that Sheriff Millsap is entitled to qualified immunity because the Complaint alleges no more than practices (or the absence of a policy) that the Plaintiff alleges were deficient when it came to her specific situation, but which

(even if proven) have not been ruled in clear violation of RLUIPA and never caused any previous violation(s). See Taylor v. Barkes, 575 U.S. 822, 826, 135 S.Ct. 2042 (2015) (reversing denial of qualified immunity where "No decision of this Court establishes a right to the proper implementation of adequate suicide prevention protocols [in a jail]. No decision of this Court even discusses suicide screening or prevention protocols. And . . . the weight of that authority at the time of [the inmate's] death suggested that such a right did not exist.").

The complaint does not state a violation of clearly established federal law by Sheriff Millsap, who is entitled to qualified immunity. See Cottone v. Jenne, 326 F.3d 1352, 1362 (11th Cir. 2003) (granting motion to dismiss by supervisor officers on § 1983 claims).

## IV.   PLAINTIFF'S OFFICIAL CAPACITY CLAIMS AGAINST SHERIFF MILLSAP FAIL

The claims against Sheriff Millsap in his official capacity fail (1) for lack of a valid Monell claim; (2) based on Eleventh Amendment immunity; and (3) because there is no sovereign immunity waiver in federal court for the Plaintiff's state law claim.

### A.  The Complaint Does Not State a Valid Monell Claim

Sheriff Millsap is sued on the same grounds in his official and individual capacities, so both types of claim should be dismissed for lack of any policy that facially violates RLUIPA. See City of Oklahoma v. Tuttle, 471 U.S. 808, 823-24 (1985) ("where the policy relied upon is not itself unconstitutional, considerably

more proof than the single incident will be necessary in every case to establish"

liability).

## B. Eleventh Amendment Immunity Bars Plaintiff's § 1983 Claim

In the wake of Manders v. Lee, 338 F.3d 1304, 1328 (11th Cir. 2003) (*en banc*), the Eleventh Circuit routinely finds that a Georgia sheriff in his official capacity is entitled to Eleventh Amendment immunity from federal liability for certain law enforcement functions. For example, in Purcell ex rel. Estate of Morgan v. Toombs County, Ga., 400 F.3d 1313 (11th Cir.2005), the Eleventh Circuit squarely held that conditions of confinement at a jail under Sheriff's Office control are encompassed within the Sheriff's role as a state actor:

> [The Sheriff] functions as an arm of the State—not of [the] County—when promulgating policies and procedures governing conditions of confinement at the … County Jail. Accordingly, even if [the plaintiff] had established a constitutional violation, [the Sheriff] would be entitled to Eleventh Amendment immunity from suit in his official capacity.

Purcell, 400 F.3d at 1325; *see also* Powell v. Barrett, 496 F.3d 1288, 1305-1308 (11th Cir.2007). As detailed in Manders v. Lee, 338 F.3d 1304 (11th Cir.2003), the Sheriff's Office operates the Jail on behalf of the State:

> The State requires that the sheriff take custody of all inmates in the jail in his county. O.C.G.A. § 42-4-4. The Georgia legislature mandates that "[i]t shall be the duty of the sheriff ⋯ [t]o take from the outgoing sheriff custody of the jail and the bodies of such persons as are confined therein … ." O.C.G.A. § 42-4-4(a)(1)-(2). [The Sheriff's] authority and duty to administer the jail in his jurisdiction flows from the State, not [the] County. See In re Irvin, 254 Ga. 251, 253, 328 S.E.2d 215 (1985) ("It is clear that the legislature has vested broad authority in the office of sheriff to administer the jails.").

Manders, 338 F.3d at 1315. Consequently, Sheriff Millsap was a state actor in

regard to the claims raised in this case, which generally concern booking practices and conditions of confinement at the Jail. See also Lake v. Skelton, 840 F.3d 1334, 1340 (11th Cir. 2016) (finding that inmate food food and medical care under O.C.G.A. § 42–5–2 are state functions). There is no relevant distinction that would remove this case from the scope of Manders and its progeny.

### C. The Eleventh Amendment Bars Plaintiff's RLUIPA Claim

The Eleventh Amendment bars Plaintiff's RLUIPA claim. Sossamon v. Texas, 563 U.S. 277, 293, 131 S. Ct. 1651, 1663 (2011) ("We conclude that States, in accepting federal funding, do not consent to waive their sovereign immunity to private suits for money damages under RLUIPA because no statute expressly and unequivocally includes such a waiver."); San Antonio v. Henry, 618 F. App'x 554, 557 (11th Cir. 2015) (same).

### D. The Eleventh Amendment Bars Plaintiff's Georgia Claim

Count 2 asserts a claim under the "Georgia Religious Freedom Restoration Act," which is codified at O.C.G.A. § 50-15A-1 et seq. The Eleventh Amendment bars state law claims asserted in federal court. Fla. Dep't Health & Rehab. Servs. v. Fla. Nursing Home Ass'n, 450 U.S. 147, 150 (1981) ("[A] State's general waiver of sovereign immunity . . . does not constitute a waiver by the state of its constitutional immunity under the Eleventh Amendment from suit in federal court."). "[A]bsent an express waiver by the state, the Eleventh Amendment bars state law claims against a state in federal court." Maynard v. Bd. of Regents of Div. of Univs. of Fla. Dep't of Educ. ex rel. Univ. of S. Fla., 342 F.3d 1281, 1287

(11th Cir. 2003) (citing Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 98-99, 104 S. Ct. 900 (1984)); DeKalb County School Dist. v. Schrenko,109 F.3d 680, 688 (11th Cir.1997) ("[A] federal court may not entertain a cause of action against a state for alleged violations of state law, even if that state claim is pendent to a federal claim which the district court could adjudicate.").

Therefore, the Court must dismiss the GRFRA claim against Sheriff Millsap in his official capacity.

### E.  There is No Sovereign Immunity Waiver For the State Law Claim

Georgia Constitution art. I, § 2, ¶ V (b) provides for a limited waiver of sovereign immunity for certain types of declaratory relief, and for narrow injunctive relief under some circumstances. However, the waiver is limited to "actions in the superior court" (Ga. Const. art. I, § 2, ¶ V (b)(1)) and this case is not brought in a superior court. Accordingly, there is no sovereign immunity waiver against the state law claim, including a claim seeking injunctive or declaratory relief. Crisp v. Ga., 2022 U.S. App. LEXIS 23487, 2022 WL 3589673, at *8 (11th Cir. Aug. 23, 2022) (explaining that because the plainitff "did not bring this suit in the state superior court … [Ga. Const. art. I, § 2, ¶ V(b)] does not waive sovereign immunity or Eleventh Amendment immunity" in federal court). For this additional reason the GRFRA claim must be dismissed.

### F.  There is No Exception Under Ex Parte Young

The Eleventh Amendment bars retrospective declaratory or injunctive relief.

Green v. Mansour, 474 U.S. 64, 73, 106 S. Ct. 423(1985); Edelman v. Jordan, 415 U.S. 651, 666-68, 94 S. Ct. 1347, (1974). That includes prohibition on a declaration that past conduct or a policy violated the plaintiff's federal rights in the past. *Id.;* Higdon v. Tusan, 746 F. App'x 805, 810 (11th Cir. 2018) (Eleventh Amendment barred requests for "entry of an order declaring that the state court violated federal law in the past or overturning state court orders"); Duke v. Hamil, 997 F. Supp. 2d 1291, 1298 (N.D. Ga. 2014) (holding that officer's voluntary resignation indicated there was no continuing violation and prospective relief was not available).

The narrow exception to the Eleventh Amendment established in Ex Parte Young only applies to injunctive relief required to stop *ongoing violations* of federal law. Green v. Mansour, 474 U.S. 64,  68 (1985); Summit Med. Assocs., P.C. v. Pryor, 180 F.3d 1326, 1338 (11th Cir. 1999) ("Ex parte Young requires the allegation of an ongoing and continuous violation of federal law. [cits.] In other words, a plaintiff may not use the doctrine to adjudicate the legality of past conduct."). Plaintiff's injunctive relief claim fails that standard, even about retention or distribution of images of her without her religious clothing.

First, the jail footage and photos were never a violation of federal law—past, present or future. Therefore, retention or distribution of images of Plaintiff without her hijab is not a basis for injunctive relief.

Second, the only likely prospective action by the Sheriff regarding the images of Plaintiff involves maintaining the footage, which is not a violation of

17

federal law. This point was the basis for dismissal of the injunctive relief claim in

T.W. v. N.Y. State Bd. of Law Exam'rs, 110 F.4th 71, 94 (2d Cir. 2024), where a

plaintiff sought expungement of failing bar exam records that she claimed existed

due to disability discrimination and caused her ongoing harm.

T.W. held that "[e]ven if she alleges ongoing harm [from the records],

injunctive relief under Ex parte Young must seek to stop ongoing 'violation[s] of

federal law.' " *Id.* (quoting Green v. Mansour, 474 U.S. 64,  68 (1985)). In T.W.

the Eleventh Amendment precluded expungement because the records resulted

from claimed past violations, and maintenance of the records was not not an

*ongoing* violation of federal law.

"[E]ven if the relief is prospective, T.W.'s injunctive relief is unavailable

under Ex parte Young because it is aimed exclusively at a past violation; it does

not seek to remedy an alleged ongoing violation of federal law." *Id.* at 95; see also

Green, 474 U.S. at 71 ("Because there is no continuing violation of federal law to

enjoin in this case, an injunction is not available.").

Likewise, in this case the existence, maintenance or even distribution of

photos of Plaintiff without her hijab provides no impediment to Plaintiff's

capability to exercise her religion outside of jail. *Cf.* 42 U.S.C. § 2000cc-1(a) ("No

government shall impose a substantial burden on the religious exercise of a person

residing in or confined to an institution . . . ."). Plaintiff is not in the Detention

Center, and presumptively she can wear whatever clothing comports with her religious views.

Instead of complaining about a burden on her current religious exercise, Plaintiff presents a religion-based objection to men seeing the photos and/or video. That objection has nothing to do with Plaintiff's capability to exercise her religion in jail, which is all that RLUIPA concerns. The objection is no ground for prospective declaratory or injunctive relief. See Alvarez v. Hill, 667 F.3d 1061, 1064 (9th Cir. 2012) (holding that RLUIPA claim for injunctive and declaratory relief asserting burden to religion was not viable following prisoner's release).

Accordingly, there is no basis for prospective injunctive or declaratory relief to halt an ongoing violation of federal law. There is no exception to Eleventh Amendment immunity.

## V.    PLAINTIFF'S STATE LAW CLAIM AGAINST SHERIFF MILLSAP IN HIS INDIVIDUAL CAPACITY FAILS

Aside from the grounds for dismissal detailed above in § I (C), official immunity bars any claim for money damages against Sheriff Millsap in his individual capacity.  It is well settled that official immunity bars all claims against a Sheriff for supervision, training and policy functions for jail administration.[2]

---

[2]  *See* Ga. Const. of 1983, Art. I, Sec. 2, Par. 9 (d); Graham v. Cobb Cty., 316 Ga. App. 738, 743, 730 S.E.2d 439, 443-44 (2012) ("the determination of how to provide adequate medical care to the prisoners at the jail involved the use of discretion by" the sheriff); Russell v. Barrett, 296 Ga.App. 114, 120, 673 S.E.2d 623, 629 (2009) (official immunity barred claims against sheriff for alleged failure to instruct, train, and supervise deputy); Norris v. Emanuel County, 254 Ga.App. 114, 118, 561 S.E.2d 240, 244 (2002) ("the allocation of limited resources requires

Therefore, official immunity bars Plaintiff's individual claim against Sheriff Millsap.

In theory official immunity can be overcome with a showing of "actual malice," *i.e.* Plaintiff would have to show that Millsap intentionally acted to harm her illegally. See Black v. Wigington, 811 F.3d 1259, 1266 (11th Cir.2016) (explaining the high actual malice standard and stating "Even recklessly illegal conduct does not support an inference of actual malice."); Marshall v. Browning, 310 Ga.App. 64, 67-68, 712 S.E.2d 71, 74 (2011) (detailing the parameters of "actual malice" in the official immunity doctrine). But there is no such evidence or allegation against Sheriff Millsap. Instead, it is undisputed that the Sheriff had no involvement with Plaintiff at any relevant time. Therefore, official immunity bars Plaintiff's individual state law claim.

## **CONCLUSION**

For each of the foregoing reasons,  Sheriff Millsap is entitled to dismissal of all claims against him. Defendant requests the Court to certify any dismissal as final under Rule 54(b).

---

discretion. It follows that the acts of [defendants] were discretionary… ."); Carter v. Glenn, 249 Ga.App. 414, 417, 548 S.E.2d 110, 113 (2001) (policymaking for police department was discretionary); McDay v. City of Atlanta, 204 Ga.App. 621(1), 420 S.E.2d 75 (1992) ("The operation of a police department, including the degree of training and supervision to be provided its officers, is a discretionary governmental function… ."); Harvey v. Nichols, 260 Ga.App. 187, 581 S.E.2d 272 (2003) (jail administration); Lowe v. Jones County, 231 Ga.App. 372, 373 (3), 499 S.E.2d 348 (1998); Bontwell v. Department of Corrections, 226 Ga.App. 524, 486 S.E.2d 917 (1997) (level of supervision and training provided to subordinate jail officers is discretionary function).

Respectfully submitted,

WILLIAMS & WAYMIRE, LLC

/s/ *Jason Waymire*
JASON C. WAYMIRE
Georgia Bar No. 742602
Attorneys for Sheriff Millsap

Bldg. 400, Suite A
4330 South Lee Street
Buford, GA 30518
T: 678-541-0790
F: 678-541-0789
jason@wmwlaw.com

## **CERTIFICATION OF COMPLIANCE WITH L.R. 5.1(B).**

Counsel for Defendant certifies that the foregoing Brief complies with the

font and point size requirements of Local Rule 5.1(B).

21